No. 98-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 90

294 Mont. 215

980 P.2d 1037

STATE OF MONTANA,

Plaintiff and Appellant,

v.

MICHAEL JAMES DEVLIN,

Defendant and Respondent.

APPEAL FROM: District Court of the Twenty-first Judicial District,

In and for the County of Ravalli,

Honorable Jeffrey H. Langton, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Honorable Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

George H. Corn, County Attorney; Geoffrey T. Mahar (argued),

Deputy County Attorney Hamilton, Montana

For Respondent:

Paul Neal Cooley (argued), Skelton & Cooley, Missoula, Montana

Argued: February 23, 1999

Submitted: March 11, 1999

Decided: Apil 28, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. In this DUI case, the Twenty-first Judicial District Court, Ravalli County, suppressed evidence of Michael James Devlin's responses to an officer's requests that he recite the alphabet and count in sequence. The State of Montana appeals. We reverse and remand for further proceedings consistent with this Opinion.**

**¶2. The issue is whether the District Court erred in granting Devlin's motion to suppress evidence of his responses to the officer's requests, made after Devlin was arrested for DUI but before he was advised of his *Miranda* rights, that he recite the alphabet starting with the letter "K" and count aloud from 46 to 72.**

**¶3. At about 11:00 p.m. on April 25, 1997, Ravalli County Deputy Sheriff Greg Stewart saw Devlin driving north on Highway 93 at erratic speeds and weaving across both the center line and the fog line at the edge of the road. When Stewart pulled Devlin over, he smelled alcohol on Devlin's breath and Devlin's speech was slurred and slow. Devlin failed several field sobriety tests and was placed under arrest and taken to the Ravalli County Sheriff's Office. There, Stewart again asked Devlin to perform field sobriety tests, videotaping the results. The tests included recitation of the alphabet starting with the letter "K" and counting out loud from 46 to 72. When these tests were administered, Devlin had not yet been read his *Miranda* rights.**

**¶4. Devlin was initially prosecuted in Ravalli County Justice Court, where he moved to suppress evidence of "all statements made by him not preceded by a *Miranda***

warning" and "all [of his] testimonial answers in field sobriety tests." The State opposed that motion. After briefing, the court denied the motion to suppress. Devlin was convicted of DUI and sentenced to two days in jail. His sentence was stayed pending his appeal to District Court.

¶5. In the District Court, Devlin renewed his motion to suppress. After reviewing the parties' briefs, the court entered an order and opinion suppressing the results of the alphabet and the number recitation tests. The State appeals.

Discussion

¶6. Did the District Court err in granting Devlin's motion to suppress evidence of his responses to the arresting officer's requests made after Devlin was arrested for DUI but before he was advised of his *Miranda* rights, that he recite the alphabet starting with the letter "K" and count aloud from 46 to 72?

¶7. Our standard of review of a ruling on a motion to suppress where the facts are not in dispute is to determine whether the district court's conclusions of law are correct as a matter of law. This Court's review is plenary as to whether the district court correctly interpreted and applied the law. *State v. Williams* (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021.

¶8. The issue here presented implicates the right guaranteed under the Fifth Amendment to the United States Constitution not to be compelled to be a witness against oneself in a criminal case. The Fifth Amendment privilege was designed to protect against the "cruel trilemma" of having to choose among answering truthfully, answering falsely, or remaining silent. *See Pennsylvania v. Muniz* (1990), 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528. Like the United States Constitution, Montana's Constitution guarantees, at Article II, Section 25, that "[n]o person shall be compelled to testify against himself in a criminal proceeding."

¶9. At the outset, we note the representation made at oral argument that before asking Devlin to perform those field sobriety tests, the arresting officer obtained Devlin's assent that he was familiar with the alphabet and with counting. We make no determination as to the constitutionality of using as evidence the response of a person unfamiliar with the alphabet when asked to recite its letters or a person unable to count when asked to recite numbers in sequence.

¶10. In *State v. Thompson* (1989), 237 Mont. 384, 773 P.2d 722, this Court upheld the use as evidence of a videotape of a DUI defendant's response to field sobriety tests including a request that he recite the alphabet. We agreed with the trial judge's conclusion that the defendant's spoken words on the videotape did not include any testimonial information. *Thompson*, 237 Mont. at 387, 773 P.2d at 724. Devlin and the District Court take the position that the United States Supreme Court's opinion in *Muniz* effectively overrules *Thompson*.

¶11. Muniz was arrested for DUI on a Pennsylvania highway and taken to a booking center where he was told that his actions and voice would be videotaped. Muniz then answered questions about his name, address, height, weight, eye color, date of birth, and age. He was also asked, but was unable to give, the date of his sixth birthday. He refused to take a breathalyzer test and was then advised of his *Miranda* rights.

¶12. Over Muniz's objection, the videotape from the booking center was introduced into evidence at his trial, and he was convicted of DUI. On appeal, the Pennsylvania Superior Court reversed on grounds that the videotape was inadmissible as evidence because it violated Muniz's right against self-incrimination. *Commonwealth v. Muniz* (1988), 547 A.2d 419. The Commonwealth of Pennsylvania appealed that decision, but the Pennsylvania Supreme Court denied the application for review. At the next level of appeal, however, the United States Supreme Court granted certiorari.

¶13. The United States Supreme Court ruled that Muniz's answers to questions about his name, address, height, weight, eye color, date of birth, and age were admissible into evidence under an exception to the *Miranda* requirements for routine booking questions. *Muniz*, 496 U.S. at 601. The Court determined, however, that the sixth birthday question was not a routine booking question, that it "required a testimonial response," and that, as a result, Muniz's response should have been suppressed as a violation of the privilege against self-incrimination. *Muniz*, 496 U.S. at 598-600. It is important to note that the *Muniz* Court specifically reserved decision on whether counting as part of the field sobriety tests would be testimonial within the meaning of the privilege against self-incrimination. *Muniz*, 496 U.S. at 604, n. 17.

¶14. The Court has defined a testimonial response as one in which the accused explicitly or implicitly relates a factual assertion or discloses information. *Doe v. United States* (1988), 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184, 197. The need for use of the human voice does not automatically make an answer

testimonial. *United States v. Wade* (1967), 388 U.S. 218, 222-23, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149, 1155. The physical inability to articulate words because of lack of muscle coordination of the tongue and mouth is not in itself testimonial. *Muniz*, 496 U.S. at 590-91.

¶15. Requiring a criminal suspect's presence and speech at a lineup does not require the person to disclose any knowledge he might have and does not violate the Fifth Amendment. *Wade*, 388 U.S. at 222-23. Such a requirement is not testimonial even though it requires a verbal response and is not a routine booking question. Similarly, a grand jury witness may be compelled to read a transcript in order to provide an example of his or her voice if the voice example is to be used only to measure the physical properties of the witness's voice and not for the testimonial or communicative content of what is said. *United States v. Dionisio* (1973), 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d 67, 75.

¶16. Devlin argues that asking him to recite the alphabet and to count is a request to disclose information beyond possible slurred speech; that incorrect recitation of the alphabet or numbers would constitute incriminating evidence from his own mouth. The same could have been said in *Wade* regarding required speech at a lineup and *Dionisio* regarding the required reading of a transcript to provide a voice example.

¶17. Devlin cites cases from Florida and Oregon, whose courts have held that under their respective states' constitutions recitation of the alphabet or counting is testimonial in nature and is therefore protected under the Fifth Amendment. In *Allred v. State* (Fla. 1993), 622 So.2d 984, the Supreme Court of Florida reasoned that the content of a response to a request to recite part of the alphabet "is incriminating evidence out of the suspect's own mouth. The incriminating inference is drawn from the testimonial act--answering the question incorrectly, not from physical evidence--slurred speech." *Allred,* 622 So.2d at 987.

¶18. In the second state case cited by Devlin, *State v. Fish* (Or. 1995), 893 P.2d 1023, the Supreme Court of Oregon ruled that under Oregon's state constitution, all field sobriety tests must be preceded by a *Miranda* warning. This ruling extended not only to requests for verbal recitation of the alphabet or numbers, but also to the horizontal gaze nystagmus test, the walk-and-turn test, the one-leg stand, and balance test and finger-to-nose test. The court reasoned that if any aspect of the field sobriety tests involves testimonial evidence, then the request that a person perform

such tests is a request for testimonial evidence. The court lumped counting and alphabet recitation together with answers to questions relating to the individual's residence and date of birth, stating "[t]here can be no doubt that those aspects of the field sobriety tests require the individual to communicate information to the police about the individual's beliefs, knowledge or state of mind." *Fish*, 893 P.2d at 1030.

¶19. On the other hand, the Supreme Judicial Court of Massachusetts, Suffolk, has reasoned that, unlike providing the date of one's sixth birthday, recitation of the alphabet "lacks inherent communicative value because it does not convey knowledge of any fact specific to the person being questioned." *Vanhouton v. Commonwealth* (Mass. 1997), 676 N.E.2d 460, 466. That court reversed an order suppressing evidence of an alphabet recitation test of a person charged with DUI. The court noted:

The same conclusion has been reached by the vast majority of other jurisdictions that have addressed the issue. The decisions hold that a straightforward alphabet recitation test (or comparable counting exercises), performed during a roadside investigation of suspected drunk driving, are outside the protective sphere of the privilege against self-incrimination because there is no disclosure of subjective knowledge or thought processes in a constitutionally prohibited sense.

*Vanhouton*, 676 N.E.2d at 466. *The court cited cases from ten jurisdictions, including the Thompson decision from Montana, in which the courts reached similar conclusions as to counting and/or reciting the alphabet.*

¶20. Neither counting nor reciting the alphabet involves an express or implied assertion of fact or belief. Therefore, a defendant who is asked to count or recite is not confronted with the "cruel trilemma" of truth, falsity, or silence discussed in *Muniz*. Where like Devlin, the accused is familiar with the alphabet and with counting, the questions here at issue cannot be said to convey information to the police about the individual's beliefs, knowledge, or state of mind. Neither the recitation of a portion of the alphabet nor counting conveys any facts specific to the person being questioned. Devlin has offered no persuasive authority or rationale for expanding the *Muniz* holding to cover relatively content-free oral declarations like reciting the alphabet and counting in sequence.

¶21. This Court's holding in *Thompson* is in line with the majority of jurisdictions

that have considered this issue, both before and after *Muniz*. We agree with the reasoning of the Massachusetts court and the cases it cited in *Vanhouton*. We reaffirm our decision in *Thompson* and hold that neither counting aloud nor reciting a portion of the alphabet is testimonial in nature and that therefore Fifth Amendment protections do not attach when a driver suspected of DUI is asked to recite either or both as part of field sobriety tests.

¶22. In his brief, Devlin raised a cross-appeal issue concerning whether the District Court erred in denying his motion to suppress evidence of his response to the officer's question,"Do you understand these instructions?" At oral argument, however, Devlin's counsel conceded that this issue is premature because there is no final judgment of conviction against him. *See* § 46-20-104, MCA. Consequently, we do not address the cross-appeal issue.

¶23. Reversed and remanded for further proceedings consistent with this Opinion.

/S/ J. A. TURNAGE

We concur:

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson dissents.

No

¶24. I have a great deal of difficulty with the Supreme Court's opinion in *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528. The Supreme Court's pigeonholing of Muniz's various statements and responses into arbitrary categories, some admissible and some not, draws impractical and result-oriented distinctions grounded more in form than in substance. Stumbling over one's address and age at booking (as Muniz did, *see Muniz*, 496 U.S. at 586, 110 S.Ct. at 2642) is no less "testimonial" than being unable to calculate the date of one's 6th birthday. Indeed, "routine booking questions" (i.e., name, address, height, weight, eye color, date of birth) fit precisely within the testimonial component criteria adopted by the Supreme Court. Such questions require the detainee or arrestee "to communicate an express or implied assertion of fact or belief." *Muniz,* 496 U.S. at 597, 110 S.Ct. at 2648. That inaccurate (and, thus, incriminating) answers to such questions are obtained during the booking process instead of during a custodial interrogation, renders them no less testimonial under the test articulated by the Supreme Court.

¶25. Furthermore, if, as the Supreme Court states, creation of the "routine booking questions" exception to *Miranda* is justified by the police's need "to secure 'the biographical data necessary to complete booking or pretrial services'" and for administrative and "record-keeping purposes *only*" (*see Muniz,* 496 U.S. at 601, 110 S.Ct. at 2650 (emphasis added)), then it logically follows that, absent a prior *Miranda* warning and waiver, the state should not also be able to incriminate the accused with his misstatements and inaccurate answers to such questions.

¶26. In other words, a more intellectually honest approach demands that the police be allowed to gather routine booking information for biographical, administrative and record-keeping purposes, but that the prosecution be prohibited from using the arrestee's inaccurate responses against him unless he had first knowingly and voluntarily waived his right to remain silent. *See Miranda v. Arizona* (1966), 384 U.S. 436, 476-77, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 ("The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.'"); *Rhode Island v. Innis* (1980), 446 U. S. 291, 301 n.5, 100 S.Ct. 1682, 1690 n.5, 64 L.Ed.2d 297 ("By 'incriminating

response' we refer to any response--whether inculpatory or exculpatory--that the *prosecution* may seek to introduce at trial.") (emphasis added).

¶27. With regard to an arrestee's failure to recite the alphabet or to count accurately, those responses, too, are "testimonial" under the criteria adopted by the *Muniz* Court. As the Supreme Court notes, giving a voice exemplar or speaking a scripted phrase during a line-up is not testimonial because the suspect is not asked to communicate any personal beliefs or knowledge of facts; the accused's voice patterns and manner of speech are content-neutral and, therefore, not testimonial. *See Muniz,* 496 at 598-99 and n.12, 110 S.Ct. at 2648-49 and n.12.

¶28. By contrast, in reciting the alphabet and in counting, the defendant is required to state, as a matter of fact or belief, that 2 follows 1 and precedes 3 and that "C" precedes "D" and follows "B". As the *Muniz* Court stated, the slurred nature of the accused's speech in answering these questions (or in answering the 6th birthday question) is not protected under the Fifth Amendment because the manner of the defendant's speaking and delivery is "real," physical, or non-testimonial evidence. *Muniz*, 496 U.S. at 592, 110 S.Ct. at 2645.

¶29. However, apart from the manner of his speaking, the inability of the accused to correctly sequence the alphabet and to count chronologically--i.e., the *content* of his responses--is as much indicative of mental confusion (the testimonial component of speech held suppressible by the Supreme Court, *Muniz*, 496 U.S. at 592-93, 110 S.Ct. at 2645-46) as is the arrestee's inability to compute the date of his 6th birthday. Both sorts of questions require the accused to "explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States* (1988), 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184. Both sorts of questions allow the fact-finder to infer from an inability to answer or from an inaccurate answer that the accused's mental state was confused. And, from both sorts of questions, "the incriminating inference of mental confusion is drawn from a testimonial act" (inaccurately reciting the alphabet or counting) rather than from the physical evidence (the manner of the defendant's speaking and delivery). *See Muniz*, 496 U.S. at 592-93, 110 S.Ct. at 2645-46.

¶30. Again, a more intellectually honest approach would allow simply the non-testimonial/physical/real evidence component of the defendant's answers--the manner of his delivery; his slurred, slow speech--to be used against him, but, absent a

prior *Miranda* warning and waiver, disallow introduction into evidence of the testimonial component--his inability to correctly recite the alphabet and to count.

¶31. Finally, these points of disagreement with *Muniz* aside, this Court in the case *sub judice*, misapplies *Muniz* even as written. The majority points out that "the *Muniz* Court specifically reserved decision on whether counting as part of the field sobriety tests would be testimonial within the meaning of the privilege against self incrimination," citing *Muniz*, 496 U.S. at 603 n.17, 110 S.Ct. at 2651 n.17.

¶32. True, the Supreme Court did not specifically state that counting is testimonial and, therefore, subject to *Miranda*. *But see Muniz*, 496 U.S. at 614-16, 110 S.Ct. at 2657-58 (Marshall, J., dissenting). Notwithstanding, the Court did state without equivocation that "counting at the officer's request qualifies as a response to custodial interrogation," *Muniz*, 496 at 603 n.17, 110 S.Ct. at 2651 n.17, and that "the inherently coercive environment created by. . .custodial interrogation preclude[s] the option of remaining silent"--thus confronting the defendant with the cruel trilemma. *Muniz*, 496 U.S. at 597-99, 110 S.Ct. at 2648-49. Importantly, however, in Muniz's case, the Supreme Court also determined that the defendant's counting was *not incriminating* because he counted accurately, *Muniz*, 496 U.S. at 603 n.17, 110 S.Ct. at 2651 n.17, a fact refuted by the dissent, *Muniz*, 496 U.S. at 615, 110 S.Ct. at 2657-58 (Marshall, J., dissenting).

¶33. Thus, under *Muniz* as written, since the DUI suspect's counting at the station house is the result of an inherently coercive custodial interrogation, the accused is *prima facie* confronted with the trilemma of telling the truth, lying or remaining silent, and, as the Supreme Court notes, the latter is not an option. In Muniz's case, *Miranda* was not implicated only because the defendant's counting--his testimony-- did not incriminate him; his counting was accurate, according to the majority.

¶34. Similarly, in the case at bar, Devlin was arrested and, then, as part of the DUI investigation at the station house, he was required to recite the alphabet starting with the letter "K" and was required to count aloud from 46 to 72. Under *Muniz*, then, it is clear that Devlin's post-arrest responses to the officer's demand that he recite the alphabet and count were as a result of a custodial interrogation, and, thus, *prima facie* subject to the requirements of *Miranda*. However, unlike Muniz, Devlin's speaking was incriminating.

¶35. **In his March 3, 1998 Opinion and Order granting the defendant's motion to suppress, District Judge Langton noted that the post-arrest videotape of Devlin's recitation of the alphabet and counting shows that he did so inaccurately.** The trial court's finding is supported by the record. The videotape reveals Devlin's stumbling recitation of the alphabet, and his losing the sequence near the end of his recitation. The videotape demonstrates that Devlin violated the officer's instruction to count only to 72; he continues to count past that number. More importantly, the videotape shows that, while he recited the alphabet and counted inaccurately, Devlin's manner of speaking did not reveal that he was intoxicated-- his speech was neither slurred nor slow. In short, in Devlin's case, under *Muniz*, the real or physical evidence component of his speech was *not* incriminating, but the testimonial component--his inaccurate recitation of the alphabet and counting--*was* incriminating.

¶36. **Consequently, under *Muniz*, even as written, Devlin's responses to the arresting officer's requests were properly suppressed, being *both* the product of a custodial interrogation *and* inaccurate (and, thus, incriminating). *See Muniz*, 496 U.S. at 603 n.17, 110 S.Ct. at 2651 n.17.**

¶37. **In the case at bar, a proper application of *Muniz* requires that Devlin's inaccurate recitation of the alphabet and his incorrect counting be suppressed, but that testimony as to the nature of his speech in delivering those responses be admissible.**

¶38. **I would so hold, and I dissent from our failure to do so.**

/S/ JAMES C. NELSON

Justices Karla M. Gray and William E. Hunt, Sr., concur in the foregoing dissent.

/S/ WILLIAM E. HUNT, SR.

No

/S/ KARLA M. GRAY