No. 00-818

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 211

STATE OF MONTANA,

Plaintiff and Appellant,

v..

JAYSON J. GRIGGS,

Defendant and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph P. Mazurek, Montana Attorney General, John Paulson, Assistant Montana Attorney General, Helena, Montana; Marty Lambert, Gallatin County Attorney, Todd Whipple, Deputy Gallatin County Attorney, Bozeman, Montana

For Respondent:

Herman A. Watson III, Bozeman, Montana

Submitted on Briefs: June 14, 2001
Decided: October 23, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The State appeals an Order issued by the Eighteenth Judicial District Court, Gallatin County, that granted Jayson J. Griggs's (Griggs) motion to suppress evidence seized from his residence pursuant to a search warrant.

¶2 We affirm.

¶3 The State raises the following issue:

> Did the District Court correctly conclude that, after considering the information contained in the search warrant application, the issuing judge did not have a substantial basis upon which to find that probable cause existed for the issuance of the search warrant?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The facts of the case are generally not in dispute, and only those germane to the resolution of the issue presented are recited herein.

¶5 On January 27, 2000, Detective Steven Crawford of the Bozeman Police Department, who was assigned to the Missouri River Drug Task Force, received a call from an anonymous person at 10:49 a.m.

¶6 The caller informed the detective that the Defendant Griggs was growing and distributing illegal mushrooms. The "operation," allegedly observed by the caller, consisted of approximately 20 mushrooms growing in two glass aquariums, and approximately five jars that contained harvested mushrooms. The caller also observed the presence of vermiculite in a sack in the same room where the mushrooms were growing. Vermiculite is a mined granular substance used in horticultural products and is often sold straight to be mixed with soil or is sold pre-mixed in potting soils. The mushroom operation was described as being located in the "first room on the left" down a hallway in Griggs's single-wide trailer home. The caller alleged that Griggs grew the mushrooms and then traded them for marijuana.

¶7 In addition to the information regarding the mushrooms, the caller also supplied the detective with a physical description of Griggs, the address of Griggs's residence, that Griggs used to be in the Army and may be in the National Guard, that he was a "sharpshooter," that he possessed several firearms, that he drove a black Ford Ranger pickup truck, and had recently improved the wood trim on his single-wide trailer home.

¶8 The anonymous tip came from out of state, approximately one month after the operation was allegedly observed by the caller.

¶9 Ten minutes after receiving the call, the detective located a "Jayson Griggs" in the phone book, and confirmed that this individual's address was within a trailer park located in Bozeman that matched the address given by the caller.

¶10 The detective discussed this information with a Gallatin County Sheriff's deputy, Don Peterson, who stated that he knew Griggs. Apparently, Peterson and Griggs had served together in the same National Guard unit. The deputy confirmed the fact that Griggs had been a sharpshooter in the Army. The deputy also informed the detective that during the summer of 1999, Griggs had told Peterson that he had used marijuana and steroids. The context of this alleged "admission"was not supplied in the application.

¶11 The detective also ran a driver's license check, which confirmed the physical description of Griggs supplied by the caller as well as the address.

¶12 That afternoon the detective and the deputy drove by the address and confirmed that the trailer appeared to have new trim. During the "drive-by," the detective also observed a Ford Ranger parked in front of the trailer that matched the description provided by the caller as well as the information gleaned from a vehicle registration check.

¶13 Crawford incorporated the foregoing information into a search warrant application. On that same day, a search warrant was issued by a district court judge, and was executed the following day, which resulted in the seizure of contraband, and Griggs's arrest.

¶14 On May 23, 2000, Griggs was charged with possession of dangerous drugs with intent to distribute, and production or manufacturing of dangerous drugs. On July 12, 2000, Griggs filed a motion to suppress, arguing that the search warrant application was issued without sufficient probable cause.

¶15 On October 6, 2000, after the matter was briefed by the parties, the District Court granted Griggs's motion to suppress. The court concluded that the judge issuing the search warrant did not have a substantial basis to find that probable cause existed to issue the warrant.[(1)] The court further concluded that the anonymous tip was insufficiently corroborated by investigating officers to provide the issuing judge with enough evidence to create a fair probability that illegal activity was occurring in Griggs's home. Further, the court determined that the information supplied by the deputy concerning Griggs's past drug use was not only stale, but also did not tend to corroborate that the alleged criminal activity was occurring.

¶16 The State appealed the District Court's order.

## STANDARD OF REVIEW

¶17 Our standard of review of a ruling on a motion to suppress where the facts are not in dispute is to determine whether the district court's conclusions of law are correct as a matter of law. *State v. Devlin*, 1999 MT 90, ¶ 7, 294 Mont. 215, ¶ 7, 980 P.2d 1037, ¶ 7. This Court's review is plenary as to whether the district court correctly interpreted and applied the law. *Devlin*, ¶ 7 (citation omitted).

¶18 As a reviewing court, we too must look solely to the information given to the impartial magistrate and to the four corners of the search warrant application. *See State v. Crowder* (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. We have often stated, however, that in so doing we must refuse to review a search warrant application sentence by sentence; rather, we must examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude that probable cause did or did not exist. *See State v. Hulbert* (1994), 265 Mont. 317, 323, 877 P.2d 25, 29 (citation omitted).

## DISCUSSION

¶19 Recently, in *State v. Reesman*, we stated that a defendant may challenge whether "the law enforcement officer's independent corroboration or investigation was sufficient within the context of a court's totality of the circumstances analysis," but added that this corollary ground was not at issue. *See State v. Reesman*, 2000 MT 243, ¶ 36, 301 Mont. 408, ¶ 36, 10 P.3d 83, ¶ 36.

¶20 Here, the issue is squarely before this Court.

¶21 That further independent corroboration by officers of the anonymous caller's information was required is not contested, although the detective in this instance mischaracterized the informant as a "concerned citizen," which led to a minor dispute between the parties. As established in *Reesman*, which was handed down while this matter was before the District Court, an anonymous informant's information regarding criminal activity *always* requires law enforcement corroboration in order to supply a reviewing magistrate with the sufficient substantial basis for a probable cause determination. *See Reesman*, ¶ 28 (citing *State v. Rinehart* (1993), 262 Mont. 204, 211-12, 864 P.2d 1219, 1223-24). Information supplied by a "concerned citizen" on the other hand--one whose identity is known, who personally observes the alleged criminal activity, and who openly risks liability by accusing another person of criminal activity--may not need further law enforcement corroboration under our analysis in *Reesman. See Reesman*, ¶ 34 (citations omitted); *Illinois v. Gates* (1983), 462 U.S. at 233-34, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527.

¶22 Here, the District Court concluded that there "was no independent police investigation which corroborated [the anonymous caller's] statements about the mushroom grow operation" and therefore the detective did not "corroborate any criminal activity." Thus, "there was not a substantial basis for concluding that probable cause for the issuance of the search warrant existed."

¶23 The State contends that the foregoing conclusions reached by the District Court were in error, namely because the further law enforcement investigation required under the standards set forth in *Reesman* do not necessarily require corroboration of *any* criminal activity *at all*.

¶24 The State argues that under this Court's analysis of this issue in *Reesman*, as well as under the U.S. Supreme Court's decision in *Illinois v. Gates* and other controlling or persuasive case law, police corroboration, when required, need not extend to *any* of the incriminating information concerning alleged criminal activity supplied by an informant. The State contends, therefore, that the failure to corroborate any of the information concerning the alleged criminal activity here does not constitute a make-or-break threshold under our totality of the circumstances test. *See Reesman*, ¶ 24 (setting forth totality of the circumstances test). In other words, the police "corroboration" as described herein--verifying concededly innocuous and non-criminal information--was sufficient for the original issuing judge to make a probable cause determination in light of the totality of the information supplied in the warrant application. The State's rationale, it seems, is that

if the police confirm that the informant is telling the truth about innocent details, the reviewing magistrate may then assume that the informant is telling the truth about the totality of the information, specifically the highly detailed but nevertheless uncorroborated incriminating information. "Indeed," according to the State, "Detective Crawford was able to corroborate nearly every detail of the tip apart from the criminal activity itself" and he further "did everything lawfully possible to corroborate the tip and determine its reliability."

¶25 In *Reesman*, we set forth the general principle that "further independent corroboration or investigation by law enforcement personnel is the panacea for most warrant applications where information is supplied by an informant." *Reesman*, ¶ 43. In concluding that further corroboration means further "independent police work of some kind," we offered "numerous successful examples of further corroboration or further investigation that established the sufficiency of an informant's information." *Reesman*, ¶¶ 44-45.

¶26 From the list of "success" stories recited in *Reesman*, there are indeed examples that are seemingly limited to the kind of corroboration at issue here: a suspect's residence, vehicle registration, and house descriptions. *See Reesman*, ¶ 45. Nevertheless, upon closer review, not one case discussed in *Reesman* concerning the issue of independent police corroboration explicitly provides that the confirmation of unrelated non-criminal information alone would suffice to establish the substantial basis necessary for a reviewing magistrate's probable cause determination. *See*, *e.g.*, *State v. Kaluza* (1995), 272 Mont. 404, 408, 901 P.2d 107, 109-10 (police corroboration of defendant's address and vehicle in the area of his residence added "nothing to the probable cause equation" although residence was leased under assumed named). We also observe that the State's argument ignores the frequent and qualifying use in *Reesman* of the terms "criminal activity" and "incriminating information" to describe the information supplied by an informant that often may require further corroboration by police. *See Reesman*, ¶¶ 29, 31, 32, 34, 43.

¶27 As this Court routinely states, probable cause exists only when a search warrant affidavit sets forth sufficient facts that would lead a prudent person to believe there is a fair probability--rather than a prima facie case--that contraband or evidence of a crime will be found in a particular place. *See Reesman*, ¶ 24; *State v. Deskins* (1990), 245 Mont. 158, 162, 799 P.2d 1070, 1072-73; *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. Although we adhere to the totality of the circumstances test, which resists "any rigid demand that specific tests be satisfied by every informant's tip," *Reesman*, ¶ 27, a warrant application

must nevertheless state *facts* sufficient to support probable cause to believe that an offense has been committed, as well as state *facts* supporting probable cause to believe that evidence, contraband, or persons connected with the offense may be found. *See* § 46-5-221, MCA (emphasis added).

¶28 Thus, it would seem obvious that law enforcement corroboration of an anonymous informant's "tip" must independently test not only the veracity of the informant's account itself--which may include verification of such innocent details as names and addresses--but also to some measured degree provide the reviewing magistrate with a factual indication that criminal activity has occurred and that contraband may be found in a particular place. In turn, these statements of fact--describing what officers accomplished in independently following up on the informant's tip--may then satisfy the search warrant application requirements under § 46-5-221, MCA, and in turn contribute to the substantial basis necessary for a probable cause determination.

¶29 In *Reesman*, however, we did not articulate a general guideline for determining at what point independent police corroboration combined with information received from an anonymous informant is sufficient to establish probable cause for the issuance of a search warrant. *See generally Reesman*, ¶¶ 40-45. We are afforded the opportunity to do so here, pursuant to the State's appeal.

¶30 Accordingly, we proceed to the issue presented.

## *Issue Presented*

*Did the District Court correctly conclude that, after considering the information contained in the search warrant application, the issuing judge did not have a substantial basis upon which to find that probable cause existed for the issuance of the search warrant?*

¶31 The State contends that the rationale of this Court in *Reesman* provides that corroboration of "the innocuous details of an anonymous tip serves to establish the reliability of the tip and provides a basis for believing the uncorroborated incriminating details."

¶32 Curiously, the State then supports this foregoing proposition with authority from Colorado, which of course is not binding or particularly persuasive with regards to issues involving search and seizure. *See People v. Titus* (Colo. 1994), 880 P.2d 148, 150 (stating

that under the totality of the circumstances test, it is possible to establish probable cause "solely through corroboration of non-criminal activity"); *State v. Hubbel* (1997), 286 Mont. 200, 209-10, 951 P.2d 971, 976 (stating that based upon our unique constitution and this state's strong tradition of respect for individual privacy, this Court has adopted its own analysis for determining when entry by law enforcement officers onto private property requires a warrant or permission).

¶33 Even so, we observe that, interestingly enough, upon stating the foregoing rule, the *en banc* Colorado Supreme Court then determined, in the very next sentence, that the information contained in the search warrant affidavit was *not sufficient* to support the issuance of a search warrant for the defendant's residence where police discovered several ounces of marijuana. *See Titus*, 880 P.2d at 150-51. The operative term in the rule set forth by the Colorado court, it seems, is the qualifying adjective "possible."

¶34 At issue in *Titus*, in part, was police corroboration of an anonymous informant's list of alleged drug buyers' vehicle license plates that frequented the seller defendant's home. Similar to the factual pattern at issue here, the police corroborated that the license plate numbers of the vehicles on the list provided by the anonymous informant matched the description of the vehicles that the informant gave a detective. *See Titus*, 880 P.2 at 151-52. Thus, the informant's candor was verified. Nevertheless, the court stated:

> The matching of vehicle license plate numbers with vehicle descriptions was not the kind of "police corroboration" that would serve to establish probable cause in this case. Absent any additional corroboration--for example, that the owners of the vehicles were involved in *illegal activity*--it was insufficient to support a finding of probable cause.

*Titus, 880 P.2d at 152 (emphasis added). Obviously, we must look elsewhere in the State's brief for viable authority to support its position.*

¶35 After a lengthy analysis of the *Illinois v. Gates* fact pattern (which we shall address in a moment), the State returns to Montana, and offers *State v. Hook* (1992), 255 Mont. 2, 839 P.2d 1274, as authority. In *Hook*, an investigating officer followed up on an informant's tip concerning an alleged residential marijuana grow operation by obtaining the defendants' power usage records and prior criminal history. *See Hook*, 255 Mont. at 3-4, 839 P.2d at 1275. Next, the State relies on *State v. Deskins* (1990), 245 Mont. 158, 799 P.2d 1070. Similarly, the investigating officers corroborated an anonymous tip concerning a marijuana grow operation by submitting electric power utility records, in addition to

home ownership, business licenses, and vehicle registration confirmations. *See Deskins*, 245 Mont. at 159-61, 799 P.2d at 1071.

¶36 Both decisions are distinguishable from the corroboration at issue here. Namely, the otherwise non-criminal utility records supplied in the warrant application served to corroborate the alleged criminal activity itself, rather than merely verify innocent, non-criminal information supplied by the informant. Thus, the officers in *Hook* and *Deskins* corroborated information concerning both criminal and non-criminal activities. Furthermore, as made clear in *Reesman*, officers must still factually demonstrate to the reviewing magistrate that the power consumption is clearly indicative of unusual, or suspicious use. *See, e.g., Deskins*, 245 Mont. at 160-61, 799 P.2d at 1071 (detective sufficiently explained that the defendants' electrical consumption records were consistent with the Crimestoppers caller's observation of the marijuana cultivation operation), *and compare with State v. Kaluza* (1995), 272 Mont. 404, 409-10, 901 P.2d 107, 110 (determining that power usage information gathered by police lacked "detailed comparisons" with average and previous residents' usage and therefore was insufficient for probable cause determination).

¶37 The State also presents federal circuit decisions that have addressed this issue under *Gates* analysis. Each case cited, however, is clearly distinguishable from the matter at bar.

¶38 For example, the confidential informant in *United States v. Morales* (8th Cir. 1991), 923 F.2d 621, 624, had supplied reliable information to officers in the past, which, under *Reesman*, does not necessarily require further police corroboration. *See Reesman*, ¶ 32. In *United States v. Reiner Ramos* (8th Cir. 1987), 818 F.2d 1392, 1396-98, officers corroborated the detailed information regarding the drug-trafficking suspect's predicted travel plans, similar to those corroborated in *Gates*. The officers confirmed an informant's predictions that the suspect traveled with a female companion, made quick, turn-around flights from Miami to Minneapolis-St. Paul at two-to-three-week intervals, and stayed at one of two hotels while in Minneapolis-St. Paul. *See Reiner Ramos*, 818 F.2d at 1397. In *United States v. McBride* (9th Cir. 1986), 801 F.2d 1045, 1047, an informant once again offered fairly accurate predictions of the suspicious activities of a heroin operation, including the movement and location of a vehicle transporting the drugs, which were subsequently observed by police. *See McBride*, 801 F.2d at 1046-48. Finally, in *United States v. Reivich* (8th Cir. 1986), 793 F.2d 957, 959-60, informants arrested for drug possession supplied officers with admissions against interest, which, under *Reesman*, does not necessarily require further corroboration. *See Reesman*, ¶ 33.

¶39 The State also cites federal authority that appears to favor Griggs, and attempts to factually distinguish those decisions from the corroboration efforts at issue here. However, the Ninth Circuit cases cited by the State have made it clear that without more, "the mere confirmation of innocent static details is insufficient to support an anonymous tip." *United States v. Mendonsa* (9th Cir. 1993), 989 F.2d 366, 369. The Ninth Circuit ruled, in *Mendonsa*, that the Montana federal district court erred in finding that a warrant was supported by probable cause where the detective merely verified "innocent facts," including where the suspect lived and the particular car he drove, which provided no "indication of criminal activity." *Mendonsa*, 989 F.2d at 369. *See also, accord, United States v. Clark* (9th Cir. 1994), 31 F.3d 831, 834-35.

¶40 Returning once again to Colorado, the State attempts to distinguish the corroboration efforts here from the law enforcement work in *People v. Leftwich* (Colo. 1994), 869 P.2d 1260. In that case, the court stated its guiding principle that "[f]acts that are easily obtained or predictions that are easily made add little to the decision of whether probable cause for a search exists." *Leftwich*, 869 P.2d at 1268. The court then quoted from its *People v. Turcotte-Schaeffer* decision, which the State selectively relies on here, as well. The Colorado court recognized that "corroboration of non-criminal activity may support a finding of probable cause." *Leftwich*, 869 P.2d at 1268. Nevertheless, the court (but not the State here) further articulated the rule:

> The focus of a court in reviewing an affidavit that relies on corroboration of non-criminal activity is the *degree of suspicion* that attaches to particular types of corroborated *non-criminal acts* and whether the informant provides details which are not easily obtained. The purpose of the inquiry is to determine if the informer's statements regarding non-incriminatory facts indicate familiarity with the implicated individual or the alleged criminal activity that would allow an inference that the informer's allegations of criminal activity are reliable. In this case, Detective Weiler admitted he was only able to corroborate non-criminal activity. The facts that were verified are neither suspicious nor difficult to obtain and could merely be based on rumors and hearsay.

*Leftwich, 869 P.2d at 1268 (citing People v. Turcotte-Schaeffer (Colo. 1993), 843 P.2d 658, 660-61) (emphasis added and footnotes omitted). The Colorado court also observed that the informant in Turcotte-Schaeffer was not anonymous and supplied officers with admissions against interest. See generally Reesman, ¶ 33.*

¶41 That the State has failed to see the forest amidst the foregoing examination of trees has not been lost on Griggs, who strenuously argues that where an inherently unreliable anonymous informant supplies information to officers, "corroboration of a few non-suspicious facts and easily predictable events should not suffice for a warrant to issue." The sum of Griggs's argument in response to the State, in fact, articulates a standard that conforms to the Colorado and federal authority relied on by the State. While it may in fact be possible to establish probable cause solely through corroboration of "non-criminal" activity, according to Griggs, some of the corroboration must nevertheless be attached to or in some manner raise suspicions concerning the alleged criminal activity. As an example, Griggs argues that his corroborated skills as a sharpshooter--ordinarily a non-criminal activity--does not attach in any manner to the criminal activity of growing psilocybin mushrooms in aquariums. Likewise, he maintains that a conversational reference to using marijuana simply does not raise the suspicion that a person cultivates hallucinogens in three-gallon jars. *See Kaluza*, 272 Mont. at 408, 901 P.2d at 110 (stating that there is nothing inherently suspicious about a person advocating the use of marijuana).

¶42 We agree with Griggs that common sense, which is an underlying guiding principle in these matters, dictates that the rationale of "further corroboration" established in *Gates* and discussed in *Reesman* has more "investigation" in mind than merely flipping through the white pages of a phone book or establishing that a particular vehicle belongs to a particular individual, who resides at a particular address. The totality of the Montana, Colorado and federal decisions relied on by the State supports this very point.

¶43 In searching with little success for authority in support of the State's argument, we emphasize that we agree that the corroboration of such innocuous "static" information may be important in establishing the veracity of an informant who may have less than estimable motives for providing authorities with incriminating information. *See*, *e.g.*, *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328 (agreeing with Illinois Supreme Court that an informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of informant's report). Further, we do not disagree with the often-cited *Gates* footnote, number 13, that "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands." *Gates*, 462 U.S. at 243, 103 S.Ct. at 2335, n.13.

¶44 What is critical in the corroboration of an informant's information--where corroboration is in fact required--is that the "innocent" non-criminal activity or evidence

subjected to further corroboration by officers ripens into suspicious behavior in light of the informant's "tip" concerning criminal activity. *See Gates*, 462 U.S. at 243, 103 S.Ct. at 2335, n.13 (quoting dissenting opinion from Illinois court's decision); *Leftwich*, 869 P.2d at 1268. The District Court made this very point in relying on this Court's decision in *State v. Valley* (1992), 252 Mont. 489, 830 P.2d 1255.

¶45 In *Valley*, we concluded that a magistrate could not properly assess the credibility of an informant or his sources. We reached this conclusion based, in part, on the lack of investigation by officers who drove to the residence of the suspected marijuana dealer and merely confirmed the accuracy of the description of the residence, a red barn, and several outbuildings. *See Valley*, 252 Mont. at 491-94, 830 P.2d at 1257-58. *See also Valley*, 252 Mont. at 495, 830 P.2d at 1259 (Weber, J., concurring, and stating that "adequate law enforcement investigation sufficient to demonstrate probable cause would have prevented the dismissal of the conviction of a clearly guilty defendant"). The reasoning is plain enough: there was no indicia of suspicion that arose from corroborating that the person suspected of criminal activity lived at a particular residence that included a barn and several outbuildings. *See Kaluza*, 272 Mont. at 408, 901 P.2d at 109-10; *Mendonsa*, 989 F.2d at 369.

¶46 We conclude that this necessary indicia of suspicion that results from police corroboration of otherwise innocent information must reveal a pattern of human behavior associated with the alleged criminal activity, or a particular activity necessary to carry out the alleged criminal activity, or activities which, when viewed as a whole, are consistent with the alleged criminal activity. *See*, *e.g.*, *United States v. Angulo-Lopez* (9th Cir. 1986), 791 F.2d 1394, 1398 (police surveillance reveals pattern of suspects exchanging packages at a shopping center which corroborates drug trafficking information); *Mendonsa*, 989 F.2d at 369 (suggesting that corroboration of informant's predicted future activity, although "innocent," may validate anonymous tip, and citing to *Gates*); *United States v. Alvarez* (9th Cir. 1990), 899 F.2d 833, 837 (police verify description given by an "anonymous tipster" of a suspect sitting in a car outside a bank which was consistent with "the actions of a would-be bank robber who decided to take a break until the coast was clear"); *United States v. Gibson* (8th Cir. 1991), 928 F.2d 250, 253 (concluding that police surveillance did not entail observing "unusual civilian or vehicular traffic at the address, nor were there very short visits characteristic of drug trafficking," and therefore corroboration was insufficient).

¶47 Such indicia of suspicion resulting from further police investigation, in fact, lies at the

very heart of the *Gates* decision. There, the Florida-Illinois drug trafficking operation was revealed to the officers via an anonymous letter. The letter detailed and predicted highly specific travel plans--which viewed alone were innocent enough--of the husband-wife team: that Sue Gates would drive to Florida and leave the vehicle there; meanwhile, Lance Gates would fly down, pick up the car, and drive back to Illinois. Subsequent investigation revealed the ripe fruition of this factual scenario down to the booked airline flight and the Hornet station wagon parked at a West Palm Beach Holiday Inn. *See Gates*, 462 U.S. at 225-27; 103 S.Ct. at 2325-26.

¶48 According to the U.S. Supreme Court, the corroboration of such predicted conduct, when viewed in conjunction with the incriminating information supplied by the letter--that the trunk of the car was loaded with marijuana in Florida and that the Gates had bragged about selling marijuana from their home in Illinois--became highly suspicious and therefore provided the substantial basis necessary for a probable cause determination by the reviewing magistrate. *See Gates*, 462 U.S. at 226, 243, 103 S.Ct. at 2326, 2335 (stating that the judge, in deciding to issue the warrant, could have determined that the *modus operandi* of the Gates had been substantially corroborated, and that the travel plans, which included an immediate return to Chicago, were "suggestive of a pre-arranged drug run").

¶49 The *Gates* Court also relied on what it characterized as the "classic case on the value of corroborative efforts of police officials," which this Court views as an instructive example as well. *See Gates*, 462 U.S. at 242, 103 S.Ct. at 2334 (citing *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327). In *Draper*, an informant reported that the defendant would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin--providing both "innocent" details mixed with alleged criminal activity. *See Draper*, 358 U.S. at 309, 79 S.Ct. at 331. The informant also supplied a fairly detailed physical description of the defendant, and predicted that he would be wearing a light colored raincoat, brown slacks and black shoes, and would be walking "real fast"--again, non-criminal information. *See Draper*, 358 U.S. at 309, 79 S.Ct. at 331. Police officers corroborated this information through surveillance. They observed a man matching the description on the correct day, exiting a train in Denver arriving from Chicago. The suspect's attire and luggage matched the informant's report, and the man was in fact walking quite fast. Thus, through corroboration of the otherwise innocent, non-criminal information provided by the informant, sufficient suspicion arose to establish probable cause for the officer to make an arrest. *See Draper*, 358 U.S. at 313, 79 S.Ct. at 333.

¶50 We conclude, therefore, that this need for "adequate law enforcement investigation" as articulated in *Reesman* means that, when required, the subsequent corroboration of an informant's tip must reveal indicia of human conduct that becomes suspicious when viewed in conjunction with the incriminating information received from the informant concerning a suspect's particular criminal activity. We further conclude that it is entirely "possible," as the Colorado court ruled in *Titus*, that in order to reveal this indicia of suspicious conduct, officers may investigate and corroborate otherwise innocent and non-criminal activity with further observations and evidence of otherwise innocent and non-criminal activity. The factual scenarios set forth in *Gates* and *Draper*, as well as *U.S. v. Reiner Ramos*, as discussed herein illustrate this very kind of corroboration. Accordingly, we conclude that absent such a minimal showing, under the factual scenario set forth here, a reviewing magistrate would not have the requisite substantial basis of sufficient facts for determining that probable cause existed in order to issue a search warrant, pursuant to § 46-5-221, MCA.

¶51 Applying the foregoing to the case at bar, we agree with the conclusions reached in the District Court's order. Absolutely none of the instances of subsequent police investigation served to supply the magistrate with any indicia of human conduct even remotely associated with the criminal activity alleged by the anonymous informant--that Griggs was cultivating psilocybin mushrooms in his private residence for the purpose of distribution in some manner. For example, the further investigation by Detective Crawford and Deputy Peterson did not establish any factual record of mushroom growing supplies or cultivation information being purchased or acquired by Griggs, or any factual indication that the trade-for-marijuana theory involved suspicious "traffic" to and from Griggs's home, or that Griggs had a prior criminal record that would corroborate the likelihood of such an illicit operation. The District Court was correct, therefore, in concluding that the detective here did not "corroborate any criminal activity" through any further investigation on his own.

¶52 Indeed, alarmingly few homes in this state where individuals enjoy the constitutionally-protected right to be let alone would be free from a search for criminal activity if probable cause for issuance of a warrant could be based on nothing more than the "corroborated" information that a sharpshooting Montanan, who happens to drive a pickup truck, at one time mentioned to an acquaintance that he or she had used marijuana.

¶53 Accordingly, we conclude that the District Court did not err in granting Griggs's motion to exclude evidence due to insufficient corroboration of information supplied by an

anonymous informant.

¶54 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice Jim Rice specially concurring:

¶55 I concur with the Court's decision herein, and with much of its rationale, particularly the explanation provided in ¶ 46 of what must be revealed or demonstrated by the information obtained to corroborate the original tip in order to establish probable cause. Clearly, under this explanation, the informant's tip need not be corroborated by independent evidence of criminal activity. To the contrary, corroboration may be achieved by evidence that would otherwise appear innocent, but for its proximity to or appearance within the demesne of the suspected criminal activity, as explained by the Court in ¶ 50. To that extent, then, the District Court erred in reasoning that the police investigation was insufficient because it "did not corroborate any criminal activity." It need not do so, and the State has prudently brought the District Court's ruling before this Court for review.

¶56 The Court's reliance on *State v. Reesman*, 2000 MT 243, 301 Mont. 408, 10 P.3d 83, is the juncture at which I diverge from the opinion. I believe *Reesman* was erroneously decided and cannot endorse its holding. While it is inappropriate to offer a dissent to *Reesman* within the context of this case, the Court's heavy reliance on that opinion warrants brief comment.

¶57 *Reesman's* framework for analyzing the sufficiency of an informant's statement is very helpful. However, as the *Reesman* Court acknowledged, judging probable cause under the longstanding totality of the circumstances standard is not a rigid process amenable to the use of specific tests. "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L. Ed.2d 527, 544. By definition, there cannot be a precise recipe for Mulligan Stew.

¶58 Despite its awareness of this principle, the *Reesman* Court proceeded, improperly in my view, to restrict the character or type of evidence which may be used to establish probable cause. The Court held that corroboration of an informant's tip must be established strictly by original police investigation, and that the independent report of the same criminal activity from a private individual who had previously provided reliable information to police "offers no corroboration value to the warrant application . . .." *Reesman*, ¶ 47. I cannot agree with these conclusions. Although the *Reesman* Court did not explain its holding to be a narrowing of the totality of the circumstances standard, I cannot read it otherwise.

¶59 The issue of a secondary citizen informant which the Court considered in *Reesman* is not present in this matter. Here, police investigation revealed that Griggs had made a statement to an officer regarding steroid and marijuana use some eight months prior to the informant's report. The State argues that the earlier statement was consistent with the informant's report that Griggs was growing psilocybin mushrooms to trade for marijuana, and thus provided proper corroboration. However, the earlier statement simply did not enhance the reported time, place, nature or method of the suspected criminal activity. While the statement may have been consistent with, and corroborative of, Griggs' expressed motive, it did not justify issuance of a search warrant for Griggs' home. For that reason, I agree that the District Court's suppression of the evidence obtained by the warrant must be affirmed.

/S/ JIM RICE

1. The reviewing judge on the motion to suppress was not the same judge who had earlier reviewed the search warrant application.