JUSTICE TRIEWEILER
dissenting.
¶24 I dissent from the majority Opinion. I would affirm the order of the District Court which granted the Defendant’s motion to suppress.
¶25 First, I conclude that Joseph Vollstedt was a confidential *52 informant with no prior history of providing reliable and accurate information and that independent corroboration of his allegations was, therefore, required to establish probable cause for issuance of a search warrant. When Vollstedt disclosed information about Palmer’s involvement and the possession and sale of illegal drugs, he did so with the understanding that his identity would not be disclosed. He went so far as to require that the recorder which had been previously recording his conversation with Detective Brodie be turned off. At no time did he subsequently agree that his identity could be included in the application for a search warrant. Brodie did so arbitrarily after he concluded that Vollstedt had breached his agreement with the police. In Brodie’s words:
On December 21, 2000, Detective Dobie interviewed Joseph VOLLSTEDT at the Missoula County Detention Center. Initially, VOLLSTEDT was cooperative and admitted his involvement in the distribution of marijuana in Missoula. At that time, VOLLSTEDT agreed to cooperate with the Missoula Police Department to farther other investigations on condition that he be kept confidential to the greatest extent possible. On December 22, 2000, upon his release from jail, Joseph VOLLSTEDT voided this agreement by declining to provide any further information or cooperation. Therefore, Joseph VOLLSTEDT has been named as the source for much of the information contained within this application for search warrant.
¶26 It escapes me how, if Vollstedt’s agreement with the police was “voided,” the police could use the information gathered as a result of that agreement while dishonoring its commitment to Vollstedt to keep his identity confidential. Brodie’s arbitrary decision to selectively enforce the State’s agreement with Vollstedt did not change the fact that when the information was provided, it came from a confidential informant.
¶27 Furthermore, the State concedes that Vollstedt was not a “concerned citizen” when he provided incriminatinginformation about Palmer and I conclude that the information he provided was not against his penal interest and, therefore, he does not qualify for the only other category of informants discussed in State v. Reesman, 2000 MT 243, 301 Mont. 408, 10 P.3d 83. It is clear from Brodie’s testimony at the suppression hearing that before Vollstedt incriminated Palmer, he had already admitted his involvement in illegal drug possession and distribution and his statements about Palmer did nothing to further incriminate him. The following Brodie testimony is an example.
*53 Q. You questioned him about the bulk of marijuana that was found at his house?
A. Yes.
Q. Which you suspected he was the main mover?
A. Yes.
Q. And he admitted it was his?
A. Yes.
Q. He admitted that he had sold it in Missoula?
A. Yes.
Q. And he admitted to the felony possession of-or use of property subject to forfeiture?
A. Yes.
Q. And he admitted to misdemeanor paraphernalia?
A. Yes.
Q. And at that point in time, you said, okay. Now that you’ve given us your goods. You’ve told us about yourself and you’ve admitted to your wrongdoings-
A. Yes.
Q. Tell us where you’re getting it from. And he said, turn off the tape?
A. I don’t recall if he asked us to turn the tape off, or we had finished the interview with regard to his-the case at hand at that time. And the tape was turned off, and then we just asked him if he would be willing to cooperate, and he just started spouting off, but it was-it was one of those two.
¶28 Finally, I conclude that after excising that information in Brodie’s application which was either inaccurate or unconnected to Palmer, the extent of the corroborating information for the confidential informant’s allegation was Brodie’s observation that during the twenty-one days of police surveillance of Palmer’s bus, it was visited more frequently than other locations in the neighborhood and that the nature of those visits gave the appearance that business transactions were occurring. I would conclude that those facts were equally consistent with Brodie’s discovery, that Palmer was an employee of a company which sold hammock style chairs and that he was in Missoula to sell those chairs. In fact, Brodie disclosed that while in Vollstedt’s house, he observed that kind of chair hanging in the living room. While Brodie concluded that that observation corroborated Vollstedt’s connection to Palmer, it could just as well have suggested that Vollstedt gained his familiarity with the inside of Palmer’s vehicle when he purchased his chair.
*54 ¶29 Our most recent and comprehensive decision which discusses the quality of corroboration necessary when corroboration of an informant’s information is required is State v. Griggs, 2001 MT 211, 306 Mont. 366, 34 P.3d 101. We stated that:
[U]pon closer review, not one case discussed in Reesman concerning the issue of independent police corroboration explicitly provides that the confirmation of unrelated non-criminal information alone would suffice to establish the substantial basis necessary for a reviewing magistrate’s probable cause determination. See, e.g., State v. Kaluza (1995), 272 Mont. 404, 408, 901 P.2d 107, 109-10.
Griggs, ¶ 26.
¶30 We summarize the corroboration requirement as follows:
We conclude, therefore, that this need for “adequate law enforcement investigation” as articulated in Reesman means that, when required, the subsequent corroboration of an informant’s tip must reveal indicia of human conduct that becomes suspicious when viewed in conjunction with the incriminating information received from the informant concerning a suspect’s particular criminal activity.
Griggs, ¶ 50.
¶31 Considered alone without other information regarding Palmer’s lawful occupation as a salesman, the observations of frequent visits to Palmer’s bus may have satisfied the test set forth in Griggs for otherwise lawful conduct which becomes suspicious when viewed in combination with an informant’s incriminating information. However, I do not believe the activity can be viewed in a selective vacuum and when viewed in the context of Palmer’s otherwise lawful occupation, the visits to his bus had a logical and lawful explanation. Under these circumstances, I would conclude that the observations were not sufficient corroboration of unlawful activity to support the allegations of a confidential informant and provide probable cause for the issuance of a search warrant.
¶32 For these reasons, I dissent from the majority Opinion. I would affirm the order of the District Court.