JUSTICE SHEA
dissents.
¶26 I dissent from the majority’s conclusion that the search warrant application contained probable cause to search Kant’s residence. I would reverse the District Court’s order denying Kant’s motion to suppress evidence of the marijuana plants and drug paraphernalia found at Kant’s residence on the ground that the warrant application did not demonstrate sufficient independent corroboration of the CS’s tip.
¶27 As the majority recognizes, the CS’s tip falls under the second prong of the Reesman test for determining probable cause: the informant was not anonymous, and the information provided was hearsay, so independent corroboration was required. Opinion, ¶ 22. The majority concludes that the following facts constituted sufficient independent corroboration to warrant a finding of probable cause to search the Kants’ home: the CS provided Crystal’s phone number and J efferies’ and Harrison’s addresses and vehicle information; and the CS stated that Crystal brings marijuana to Jefferies’ home every Wednesday at around 7:00 p.m., and Barnes observed an unidentified person emerge from a vehicle registered to Kant enter Jefferies’ residence on a Wednesday at 6:43 pm.[1] Opinion, ¶ 23. For the reasons *246 discussed below, I respectfully disagree with my colleagues that this constitutes sufficient independent corroboration.
¶28 In State v. Griggs, 2001 MT 211, ¶ 40, 306 Mont. 366, 34 P.3d 101, we held:
The focus of a court in reviewing [a search warrant application] that relies on corroboration of non-criminal activity is the degree of suspicion that attaches to particular types of corroborated noncriminal acts and whether the informant provides details which are not easily obtained. The purpose of the inquiry is to determine if the informer’s statements regarding non-incriminatory facts indicate familiarity with the implicated individual or the alleged criminal activity that would allow an inference that the informer’s allegations of criminal activity are reliable.
(Emphasis in original). The warrant application in this case does not indicate how the CS obtained information that Crystal was growing marijuana at her residence or supplying marijuana to Jefferies. Only two of the facts corroborated by Barnes relate to the Kants: (1) Crystal’s cell phone number, and (2) the vehicle from which the unidentified person emerged at Jefferies’ house was registered to Kant. The application does not allege that the CS was “familiar” with the Kants or, for that matter, that the CS ever even interacted with the Kants.
¶29 “[C]orroboration must consist of more than merely innocent, public information.” State v. Tackitt, 2003 MT 81, ¶ 34, 315 Mont. 59, 67 P.3d 295 (citing Griggs, ¶ 50). Apparently, none of the majority has been party to a group text, but there are myriad innocent ways that the CS could have obtained Crystal’s cell phone number from any number of people, including Jefferies, without ever interacting with Crystal in any manner, legal or illegal. The fact that the CS had Crystal’s cell phone number bears no weight on the CS’s reliability regarding a marijuana grow operation in Crystal’s home. Likewise, Barnes’ corroboration of Jefferies’ and Harrison’s addresses and vehicle information does not lend weight to the reliability of the CS’s tip that Crystal was growing and distributing marijuana. According to the CS, she and Harrison are roommates; so as far as that information goes, the corroboration consisted of the CS’s knowledge of her own address. More to the point, the information regarding Jefferies’ and Harrison’s addresses and vehicle information bears no relation to the Kants.
¶30 I also would not find the CS’s reliability bolstered by her admission to using drugs with Jefferies and trading prescription drugs with Jefferies in exchange for marijuana. While this might bolster the CS’s credibility if the goal was to search Jefferies’ home, none of the *247 OS’s self-incriminating admissions were related to the crime at issue in this case or implicated the CS in any way into the investigation of the Kants.
¶31 I also must disagree with the majority’s conclusion that Barnes’ observation of an unidentified individual driving Kant’s vehicle to Jefferies’ house supports a finding of probable cause to search the Kants’ residence. The suspicion that results from police corroboration of otherwise innocent information “must reveal a pattern of human behavior associated with the alleged criminal activity, or a particular activity necessary to carry out the alleged criminal activity, or activities which, when viewed as a whole, are consistent with the alleged criminal activity.” Griggs, ¶ 46. According to the warrant application, the CS “stated that Crystal Kant brings marijuana to Vicki Jefferies every Wednesday around 7:00 pm.” This was corroborated by Barnes’ observation that “on Wednesday, January 7,2015, at 6:43 p.m., a vehicle bearing a license plate registered to Kant was seen arriving at Jefferies’ home[,]” and “[a] single unidentified occupant exited the vehicle and entered the home.” Opinion, ¶ 7. There is no indication that the individual emerging from the vehicle was Crystal, or even that the individual was female. Nothing in the warrant application indicates that the unidentified individual was carrying anything into the house, let alone a suspicious package. Nor does the application state how long the unidentified individual remained at Jefferies’ residence, whether he or she emerged empty-handed after entering with a package, or whether there were other individuals at Jefferies’ home at the time. ¶32 If the unidentified individual entered Jefferies’ home carrying a package of some sort and emerged empty-handed minutes later, this may fairly be considered corroboration of criminal activity. On the other hand, if the unidentified individual entered Jefferies’ home carrying a bottle of wine and a Bundt cake and emerged empty-handed two hours later, this is pretty solid corroboration of a previously scheduled dinner party. Therein lies the problem. Either of these scenarios is equally supported by the facts — or more precisely, lack thereof — asserted “within the four corners of the application.” Reesman, ¶ 24.
¶33 Furthermore, law enforcement corroboration of an informant’s tip “must independently test not only the veracity of the informant’s account itself ... but also to some measured degree provide the reviewing magistrate with a factual indication that criminal activity has occurred and that contraband may be found in a particular place.” Griggs, ¶ 28 (emphasis added). Accord Barnaby, ¶ 29 (“[T]he issuing judicial officer must make a practical, common sense determination, *248 given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place.”). As discussed above, the warrant application does not state how the CS obtained information that Crystal was growing marijuana at her house. The application does not indicate whether the CS even knew the location of the Kants’ residence. Moreover, the CS’s statements provided in the application were inconsistent as the CS both stated that Crystal was growing marijuana at her residence, which is located in Livingston, and that Crystal “was bringing marijuana to Livingston.” Finally, there was no independent verification of the location of the marijuana grow operation, or an independent indication that marijuana and drug paraphernalia would be found at the Kants’ residence.[2]
¶34 The entire sum and substance of what the majority determines provides a substantial basis for concluding there was a probability of criminal activity is a CS who provided the following information: two home addresses, one of which was the CS’s own address, and neither of which was the subject of the search warrant; information regarding vehicles owned by two individuals, neither of whom were the Kants; Crystal’s cell phone number which could have been obtained in any number of innocent ways; and an allegation that Crystal delivered marijuana to Jefferies’ home every Wednesday at approximately 7:00 p.m., which was then corroborated by an observation of a male or female of unknown description, arriving at Jefferies’ home in a car registered to Kant near 7:00 p.m. on the Wednesday following the tip, but with no other facts regarding the circumstances of that single visit from which could be inferred criminal activity. Assuming this constitutes corroboration of the CS’s information, the question remains: Corroboration of what? As noted above, “corroboration must consist of more than merely innocent, public information.” Tackitt, ¶ 34 (citing Griggs, ¶ 50).
¶35 For the foregoing reasons, I dissent.

 Although the warrant application does not identify Barnes as being the surveillant of the unidentified person, I agree with the majority that “it is reasonable to conclude ... that Barnes was the surveillant.” Opinion, ¶ 23.

 The majority does not base its decision on either of the reports that Kant challenged as too stale to be considered; therefore, my analysis does not consider them either.