No. 89-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

EMASCO INSURANCE COMPANY,

      Plaintiff and Respondent,

  -vs-

DUSTIN O. WAYMIRE and JULIA A. WAYMIRE,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Brad L. Arndorfer; Arndorfer Law Office, Billings,
          Montana

      For Respondent:

          James L. Jones and Robert L. Sterup; Dorsey &
          Whitney, Billings, Montana

Submitted on Briefs:  Feb. 9, 1990

Decided:  March 20, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant Dustin and Julia Waymire appeal the judgment of the Thirteenth Judicial District Court, Yellowstone County, in a case involving a claim under a fire insurance policy. The District Court, sitting without a jury, entered judgment in favor of the plaintiff, Emcasco Insurance Company (Emcasco), relieving Emcasco from all obligations to pay the Waymires any amount under the policy of insurance, on the grounds that the Waymires concealed, misrepresented, or ommitted material facts when applying for the policy and they intentionally caused the fire destroying the property. We affirm.

The Waymires raise the following issues on appeal:

(1) Is there substantial credible evidence to support the District Court's finding that the Waymires were responsible for causing the fire that destroyed the insured premises?

(2) Is there substantial credible evidence to support the District Court's finding that appellants concealed, misrepresented or omitted material facts in applying for the policy of insurance on their former home?

The District Court made the following findings of fact: The Waymires were the owners of a residence located at 3511 Bitteroot Drive, Billings, Montana. The Waymires purchased a fire insurance policy from Emcasco insuring their residence in the amount of $95,000.00, personal property in the amount of $76,000.00, loss of use in the amount of $19,000.00, and other structures in the amount

2

of $9,500.00, along with other additions such as cleanup costs as contained in the policy. The Waymires had intermittently insured the residence with Emcasco from May 1, 1984 until the time of the fire.

The policy in question was issued in June of 1986. The agent who filled out the application for this policy testified that Mr. Waymire apparently misrepresented his loss history because the agent specifically noted that there were no previous losses listed on that application and that Mr. Waymire had reviewed and signed it. Actually, the Waymire's had two prior fire losses at the same location---one in July 1979, the other in September 1980---both involving the burning of a mobile home. Emcasco's agent, its underwriter, and its expert witness, all testified that Emcasco never would have issued the policy if it had known of the Waymire's prior losses.

On the night of May 30, 1987, the Waymire residence at 3511 Bitteroot Drive was damaged by fire. At the time, the Waymires lived in the residence with their two sons, Jeffrey, age 27, and David, age 28. Mr. Waymire and his sons had built the log home, a garage, a barn, and a gun shop on the premises. Mr. Waymire is an electrician by trade but has not been regularly employed in that field since 1983.

Instead, Mr. Waymire and sons ran a wholesale firearms business out of their home at 3511 Bitteroot Drive. The business was primarily a mail-order business with sales generated through ads in a firearms publication called Shotgun News. Consequently,

the Waymires usually had a large inventory of firearms on hand on their property, which they stored primarily in the gunshop, although they kept some, particularly their personal firearms, in their family residence. To finance this business, Mr. Waymire borrowed $61,800.00 from Valley Credit Union on June 26, 1985, secured by a trust indenture on the property. The note called for payments of $959.00 a month and a balloon payment on July 1, 1990. A second loan from the credit union secured by another trust indenture subsequently raised this monthly obligation to approximately $1,400.00. Mr. Waymire also purchased a substantial portion of his gun inventory on credit from his supplier, Interarms. At the time of the fire, he owed Interarms $29,028.18.

Several days prior to the fire, the Waymires removed Mrs. Waymire's Lowrey organ, a family heirloom, from the home and delivered it to a repairman who had serviced it before at the Waymire residence. The repairman had offered to examine it at the Waymire home but testified that Mr. Waymire "insisted" on bringing it to him. In 25 years, this was the only local customer to have done this. Also, on the day of the fire, the two Waymire sons left town for a gun show in Lewistown, Montana, taking most of the family's personal gun collection, usually kept in the house, with them, as well as other guns kept in the gunshop. Also on the morning of the fire, one of the Waymire sons purchased two "jerrycans" of diesel fuel, allegedly for the family tractor, and left them outside the gunshop. At 5:00 on the evening of the fire, Mr. and Mrs. Waymire left the premises for the evening to travel

4

to Roberts, Montana to visit a hunting guide about planning a future trip. They took the family dog with them. They were gone at the time that the fire started around 10:00 p.m. and returned sometime after 11:00 p.m.

After the fire, investigators found one of the jerrycans in the basement of the remains of the house. They also discovered that an apparent burglary had allegedly been committed the same evening of the fire. The lock to the gun shop had been broken with a pick found nearby and several of the the less expensive items from the gun inventory were missing. However, the most valuable items in the inventory were not taken. Thirteen guns were taken from the shop valued at $70.00 each and two at $135.00 each. The Waymires apparently left the house unlocked, because two rifles belonging to each of the Waymire sons and valued at $650.00 each were allegedly stolen from the home and there was no evidence indicating a break-in. During the investigation Mr. Waymire stated that it was his belief that the alleged burglars took one of the fuel cans and set fire to the house after the burglary. Investigators also found what they believed may have been the remains of some type of timing device commonly used to delay the ignition of arson caused fires.

The Waymire's had twice listed the home for sale without success and one week before the fire had the property appraised.

The District Court also found that the Waymire's firearms business was causing the family serious cash flow problems. At the time of the fire, the Waymires were two months behind on one

of the loans on their home and one month behind on another. Their debts at the time of the fire totaled $113,397.00. Thus, the District Court found that the Waymires had a financial motive to cause the fire. Their potential recovery from the policy was $171,000.00 plus loss of use up to $19,000.00 The insurance payment would also terminate their monthly obligations of nearly $1,400.00 to their credit union. After the fire the Waymires would still own the land, three buildings, and the business inventory, free and clear of all debts.

Emcasco's expert, Chriss Rallis, a trained fire investigator, concluded that the fire was incendiary in nature and deliberately set due to (1) the rapid ignition and spread of the fire, (2) the presence of "accelerant" pour patterns on some of the wood recovered from the debris, (3) the presence of a fuel can in the debris which Mr. Waymire told him did not belong in the house, (4) evidence that one of the doors to the house was unlocked, (5) the fact that two prize guns were not found in the debris, and (6) the fact that Mr. Waymire told him that he thought that the fire had been deliberately set, in conjunction with the burglary. Mr. Rallis further testified that the circumstances surrounding the fire were consistent with common characteristics of insurance fraud fires and inconsistent with other types of fires such as pyromaniac, revenge, or vandalism fires.

Furthermore, Terry Jesse, a detective with the Yellowstone County Sheriff's office with eleven years of experience and extensive training in the investigation of burglaries testified

6

that in his opinion the burglary was simply staged to draw attention away from the arson.

The District Court concluded that there was a reasonable basis for Emcasco's denial of the claim and such denial was in good faith. The Court further concluded that Mr. Waymire was barred from recovering under the policy because he concealed, misrepresented, or omitted material facts in his application, and because "the evidence establishes the Defendants were responsible for causing the fire." The Waymire's now appeal.

First, we note that this case was decided by the trial judge sitting without a jury. The trial judge observed the demeanor of the witnesses and is in a better position to judge their credibility than a reviewing court, thus "[w]e will not substitute our judgment for that of the trier of fact, but rather will only consider whether substantial credible evidence supports the findings and conclusions." Spraggins v. Elvidge (1982), 199 Mont. 155, 159, 647 P.2d 859, 861, quoting Cameron v. Cameron (1978), 179 Mont. 219, 228, 587 P.2d 939, 945. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P.

The insurance policy issued to the Waymires specifically excluded coverage to insureds who deliberately set fire to their own property with the intent to destroy it. This principle is also pervasive in the common law, and has been consistently recognized by this Court. See e.g. Britton v. Farmer's Ins. Group (1986), 221

7

Mont. 67, 721 P.2d 303; Mountain West Farm Bureau Ins. Co. v. Girton (1985), 215 Mont. 408, 697 P.2d 1362; St. Paul Fire & Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 665 P.2d 223; Hier v. Farmers Mutual Fire Ins. Co., (1937), 104 Mont. 471, 67 P.2d 831, 110 A.L.R. 1051. Arson for insurance fraud may be established by circumstantial evidence. Mountain West, 697 P.2d at 1364. Emcasco had the burden of proving by a preponderance the following elements:

(1) the incendiary nature of the fire;

(2) that the insureds had a motive for setting the fire, and

(3) surrounding circumstantial evidence implicating the appellants in setting the fire or causing it to be set. Britton, 721 P.2d at 317; Silva v. Fire Ins. Exchange (D. Mont. 1986), 647 F.Supp. 1397, 1400.

We conclude that there was substantial evidence to support the trial judge's finding that the Waymires intentionally caused the fire which destroyed their home. The evidence that the fire was incendiary in nature was overwhelming and essentially uncontested.

We also conclude that Emcasco offered substantial evidence that the Waymires had a financial motive for setting the fire due to cash flow problems in their gun business and the specter of a balloon mortgage payment. In their brief the Waymires contend that the District Court's finding no. 27 concerning the adjusted gross income (A.G.I.) of the Waymires for the years 1982-1987 is clearly erroneous, in that it compares gross income and taxable income

8

figures instead of adjusted gross income figures. The Waymires argue that a correct comparison would not indicate a decrease in their income and a corresponding financial motive for arson. A simple review of the Waymires' tax returns for these years (plaintiff's exhibits 25-30) indicates that the figures cited by the District Court are the appropriate adjusted gross income figures. These figures also demonstrate a significant decrease in the Waymires' income over this period. Thus, there is no merit in this contention.

Finally, Emcasco also offered substantial surrounding circumstantial evidence that the Waymires' intentionally set or caused the fire to be set: (a) the fire occurred at night after dark; (b) the insureds were away from the premises at the time of the fire; (c) an accelerant was used; (d) the accelerant was made available on the premises by the insureds; (e) the property had been for sale without success; (f) valuable and sentimental personal property was removed from the premises prior to the fire; and (g) the insureds were experiencing financial difficulty and payments on the mortgages on the property were a significant expense to the insureds. See e.g. Mountain West, 697 P.2d at 1364. "The arson scheme fit the insurance arsonist profile and was incompatible with other arson profiles such as revenge or vandalism." Mountain West, 697 P.2d at 1364. Substantial evidence supports the conclusion that the Waymires intentionally caused the destruction of their home.

Having concluded that substantial evidence supports the

9

trial judge's finding that the Waymires intentionally caused the loss of their home and that the District Courts findings are not clearly erroneous, we need not address the other issue raised by the appellants. The judgment of the District Court is

AFFIRMED.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices