No. 92-059

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

        Plaintiff and Appellant,

-vs-

RODNEY WILLIAM HOOK,

        Defendant and Respondent.



FILED

SEP 28 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Edward McLean, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General,
        Cregg W. Coughlin, Assistant Attorney General,
        Helena, Montana
        George H. Corn, Ravalli County Attorney, Hamilton,
        Montana

    For Respondent:

        Michael G. Alterowitz; Connell, Beers & Alterowitz,
        Missoula, Montana

Submitted on Briefs:  July 2, 1992

Decided: September 28, 1992

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal by the State of Montana of an order of the Fourth Judicial District Court, Ravalli County, granting the defendant's motion to suppress evidence obtained in a search of his residence. We reverse.

The only issue on appeal is whether the District Court erred in granting defendant's motion to suppress.

This case evolved from an anonymous telephone call received by the Ravalli County Sheriff's Department, claiming that Rodney Hook was conducting a marijuana growing operation in a cabin which served as his residence. The caller provided the general location of the cabin, the address and a description of the exterior of the cabin. He also described the vehicle Mr. Hook drove. He stated that there were three bedrooms upstairs and the marijuana growing operation was in the first bedroom on the right on the second floor. He further explained that there were approximately forty plants ready to harvest which were grown under two 1000 watt grow lights. The phone call was terminated before the dispatcher could receive any more information.

The call was reported to the detective who conducted an investigation of some of the information. He checked the telephone book to confirm Mr. Hook's name and address and then drove out to the residence to confirm the caller's description of the house exterior. He also sought an investigative subpoena to obtain Mr. Hook's electric power usage records because he knew from experience that marijuana growing operations typically consume large amounts

2

of electric power. Finally, he checked the National Crime Information Computer system and learned that Mr. Hook had been previously charged with possession of a controlled substance.

When Detective Bailey received the investigative subpoena, it revealed that Mr. Hook's use of electric power was 2½ times greater than the previous tenant's electrical use. Mr. Hook's electricity use in the past five months had averaged 2,446 kwh per month although the previous tenant averaged 970 kwh per month. Montana Power Company employees told the detective that the average residential use was 740 kwh per month with an alternate heat source.

Detective Bailey also received a four-day power usage record from the power company. On June 6, Mr. Hook called the power company to inform it that he was making the cabin his permanent residence. As a cabin, a power usage reading was only made once every six months as compared to monthly for a residence. He also provided the power usage reading for that day. The power company went out to the cabin on June 10, 1991 and calculated a four-day power usage of 710 kwh. If power usage continued at that rate, the monthly total would be approximately 5000 kwh.

Detective Bailey provided the above information and his history of investigating twelve prior marijuana growing operations in the application for a search warrant. The search warrant application was granted and on June 11, 1991, Detective Bailey's search of Mr. Hook's residence revealed marijuana plants, marijuana growing equipment, dried marijuana and drug paraphernalia. Mr.

3

Hook admitted the marijuana was his and was subsequently arrested and charged with a violation of § 45-9-103, MCA and of § 45-10-103, MCA.

Mr. Hook filed a motion to suppress evidence recovered in the June 11 search and his motion was granted on December 12, 1991. This appeal by the State of Montana followed.

The core issue is the sufficiency of the application of the search warrant. "To address the issue of probable cause for issuance of a warrant, this Court has adopted the 'totality of the circumstances' test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. . . ." State v. Crowder (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. O'Neill (1984), 208 Mont. 386, 394, 679 P.2d 760, 764. "[T]he duty of the reviewing court is to ensure the magistrate had a 'substantial basis' for . . . conclud[ing] that probable cause existed." Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. See Crowder, 810 P.2d at 302. "The magistrate's determination of probable cause should be paid great deference by reviewing courts." State v. Sundberg (1988), 235 Mont. 115, 123, 765 P.2d 736, 741. "Our function is not to review de novo the magistrate's determination that probable

4

cause existed justifying the issuance of a search warrant." State

v. Baldwin (1990), 242 Mont. 176, 183, 789 P.2d 1215, 1220.

The factual information provided above formed the basis for

the magistrate's conclusion that there was probable cause to issue

the search warrant. Probable cause to issue a search warrant:

> [I]s not a prima facie showing of criminal activity, but
> only its probability. Considerably less evidence is
> required for the issuance of an arrest or search warrant
> than for conviction; and legally unimpeachable findings
> of probable cause can rest upon evidence, for instance
> hearsay, which is not legally admissible at the criminal
> trial itself. [Citations omitted.]

Sundberg, 765 P.2d at 739.

We conclude there was probable cause to issue a search warrant

for the Hook residence. The confidential informant provided

detailed information about the defendant and the marijuana growing

operation. "[B]ecause an informant is right about some things, he

is more probably right about other things,. . . including the claim

regarding the . . . illegal activity. . . ." Gates, 462 U.S. at

244, 103 S.Ct. at 2335, 76 L.Ed.2d at 552.

The detective confirmed much of the informant's information as

well as obtaining the power usage bills for the defendant's

residence and the defendant's arrest record. He stated the basis

of his expertise in these types of investigations and recited in

detail the power usage, the times of residence by the defendant,

previous usage by former occupants, normal residential usage, and

comparisons as to these facts both specifically and generally. "It

is enough, for purposes of assessing probable cause, that

'[c]orroboration through other sources of information reduced the

5

chance of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" Gates, 462 U.S. at 244-45, 103 S.Ct. at 2335, 76 L.Ed.2d at 552. "[I]nformation in the form of an anonymous tip from an informant whose reliability is established by independent corroboration may serve to establish probable cause." State v. Deskins (1990), 245 Mont. 158, 162, 799 P.2d 1070, 1073.

The defendant states that there are many legal reasons for his high power usage but he provides no reasons or rationale for the phenomenon. "Although high power consumption alone will not establish probable cause for a search, it may be a factor in determining whether the affidavit as a whole reaches that level." State v. Carter/Grant (Or. App. 1990), 790 P.2d 1152, 1156. See also State v. Nuttall (Or. App. 1989), 776 P.2d 26, 29; State v. Sterling (Wash. App. 1986), 719 P.2d 1357, 1360; State v. Ledbetter (Idaho App. 1990), 794 P.2d 278, 281.

Detective Bailey also stated on his search warrant application that the defendant had a prior arrest record in California for possession of a controlled substance. The officer did no further investigation of this incident. However, this factor, though not probative of commission of a crime, is one of the many factors to be considered under the totality of the circumstances test.

The defendant's argument that the handwritten and typed notes of the dispatcher and the search warrant application are not exactly the same is without merit. None of the discrepancies are significant. The same basic information is contained in the forms

6

and there is no evidence that the information was concocted by the dispatcher. These types of paperwork "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." Gates, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546.

In conclusion, the defendant has not met his burden of overcoming the presumption that the magistrate properly issued the search warrant. The factors present in this case, viewed in their totality, provide a substantial basis for a magistrate to conclude that probable cause to issue a search warrant existed.

REVERSED.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

7

September 28, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

George H. Corn
Ravalli County Courthouse
Courthouse Box 5008
Hamilton, MT   59840

Hon. Marc Racicot, Attorney General
Cregg W. Coughlin, Assistant
Justice Bldg.
Helena, MT   59620

Michael G. Alterowitz
Connell, Beers & Alterowitz
P.O. Box 7307
Missoula, MT   59807-7307

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy