No. 99-334

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 250

STATE OF MONTANA,

Plaintiff/Respondent,

v.

DUANE DAVID GRAY,

Defendant/Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jack H. Morris, Jardine & Morris, Whitehall, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Pamela P. Collins,

Assistant Attorney General, Helena, Montana

Robert M. McCarthy, Silver Bow County Attorney; Brad Newman,

Deputy County Attorney, Butte, Montana

Submitted on Briefs: June 21, 2001
Decided: December 6, 2001 Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Duane David Gray appeals from an order issued by the Second Judicial District Court, Silver Bow County, which denied his motion to suppress evidence seized pursuant to a search warrant. We affirm.

¶2 The sole issue raised on appeal is whether the District Court erred in determining there was sufficient probable cause to support the issuance of a search warrant.

## BACKGROUND

¶3 In November 1997 a confidential informant ("CI") contacted Detective Jerry Stradinger of the Butte-Silver Bow Law Enforcement Agency to report a suspected marijuana "grow" operation. Stradinger noted that CI had previously provided law enforcement officers with reliable information.

¶4 CI told Stradinger that Duane Gray was conducting the alleged operation at 1741 Grand Avenue in Butte, Montana. According to CI, her live-in companion, Troy Wallace, built a room in the upper portion of the Grand residence to facilitate Gray's grow operation. Construction on the grow room had allegedly been completed within the last three months. CI indicated that the room was partitioned to accommodate varying stages of marijuana plant growth and, to gain access, one must locate a concealed button or latch. CI stated that she had no personal knowledge of the operation but learned all of this information from Wallace. However, CI did inform Stradinger that she had seen marijuana buds and leaves which Gray purportedly produced in his grow operation. Stradinger noted that Wallace had a history of drug related offenses.

¶5 Based on CI's allegations, law enforcement officers surveyed the Grand residence's exterior. This survey confirmed CI's description of the property. Officers observed what they believed to be four new air vents and a new chimney on the roof. Based on their

experience, the officers believed these vents were consistent with the ventilation requirements of grow operations. Utility and law enforcement records established that Gray did in fact reside at the Grand residence. The officers also observed Gray's brother, a known drug user, frequent the residence.

¶6 After obtaining an investigative subpoena, the officers examined the Grand residence's utility records. A Montana Power Company representative advised the officers of an unusual surge in electrical power usage at the property in October 1997. The residence's power records indicated a relatively constant power consumption from June 1997 to September 1997. However, the power consumption increased by 376 kilowatt hours in October 1997. Again, based on their experience, the officers felt this October power consumption was consistent with the power demands of a grow operation.

¶7 With this information, on November 19, 1997, Stradinger applied for and obtained a search warrant for the Grand residence. A search of the residence revealed 77 marijuana plants, marijuana growing equipment, and drug paraphernalia. The search confirmed some, but not all, of the information CI disclosed to Stradinger about the residence. Based on the search results, Stradinger arrested Gray. Gray was subsequently charged by information with one count of criminal production or manufacture of dangerous drugs (Count I), one count of criminal possession of drug paraphernalia (Count II), one count of use or possession of property subject to criminal forfeiture (Count III), and one count of resisting arrest (Count IV).

¶8 On December 17, 1997, Gray appeared with counsel and entered pleas of not guilty to each of the four counts. On July 16, 1998, Gray filed a motion to suppress the seized evidence on the grounds that the search warrant lacked sufficient probable cause to justify the search. After a hearing on August 18, 1998, the District Court denied Gray's motion to suppress.

¶9 In March 1999, pursuant to a plea agreement, Gray pled guilty to Counts I and III and the State dismissed Counts II and IV of the Information. On April 22, 1999, the District Court sentenced Gray to three years in the Montana Department of Corrections (three years for each count to run concurrently), fined Gray $1,000 on Count I, and ordered Gray's property forfeited to the State of Montana on Count III. The District Court suspended the custodial portion of Gray's sentence with conditions and stayed execution of the sentence pending Gray's appeal. Gray appeals the District Court's denial of his motion to suppress.

## STANDARD OF REVIEW

¶10 In reviewing a district court's denial of a motion to suppress evidence, we determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law is correct. *State v. Reesman*, 2000 MT 243, ¶ 18, 301 Mont. 408, ¶ 18, 10 P.3d 83, ¶ 18.

¶11 We must look solely to the information given to the impartial magistrate and to the four corners of the search warrant application. *State v. Crowder* (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. In so doing, we must refuse to review a search warrant application sentence by sentence; rather, we must examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude that probable cause existed. *State v. Hulbert* (1994), 265 Mont. 317, 323, 877 P.2d 25, 29.

## DISCUSSION

¶12 Did the District Court err in determining there was sufficient probable cause to support the issuance of a search warrant?

¶13 An application for a search warrant must state facts sufficient to show probable cause for the issuance of the warrant. *Reesman*, ¶ 24. To address the issue of probable cause for issuance of a warrant, this Court follows the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. *Reesman*, ¶ 24. Under this test, to determine whether a search warrant should be issued, the judge evaluates the facts asserted within the four corners of the application and makes a practical, common-sense decision as to whether there is a fair probability that incriminating items will be found in the place to which entry is sought. *Reesman*, ¶ 24. In our review, it is critical that we pay great deference and draw every reasonable inference possible to support a magistrate's determination that probable cause exists. *Reesman*, ¶ 19.

¶14 Gray contends the search warrant application lacked the necessary information to ascertain probable cause sufficient to justify a search of Gray's residence. To support this proposition, Gray argues the search warrant application contained unreliable hearsay, insufficient detail, and unsupported conclusory statements.

¶15 Gray points out that CI obtained all of her information about the operation from Wallace. Thus, Gray argues that simply alluding to CI's reliability in the search warrant

application was insufficient because CI's reliability provided no insight into the credibility and veracity of the hearsay information disclosed by Wallace.

¶16 As mentioned above, the record indicates that CI informed Stradinger that Gray's residence had a concealed room in the upper portion of the residence which was partitioned to accommodate varying stages of marijuana growth. However, CI had no personal knowledge of this concealed room. She acquired this information from her live-in companion, Wallace. CI did view marijuana buds and leaves which Gray purportedly produced from his Grand residence. Again, Wallace provided the information about the marijuana's origin.

¶17 In *Reesman*, we reiterated that corroboration of an informant's information through other sources is necessary when the information is hearsay or the informant is anonymous. *Reesman*, ¶ 28. Clearly, CI was not an anonymous informant. The search warrant application states that CI had provided substantiated information in the past which implies Stradinger was aware of CI's identity. However, since CI had no personal knowledge of Gray's operation, the information CI provided to Stradinger constituted hearsay. Therefore, Stradinger was obligated to corroborate CI's information through independent investigation. Nevertheless, CI's information may be considered with other factors in determining probable cause under the totality of the circumstances test. *See State v. Rinehart* (1993), 262 Mont. 204, 211, 864 P.2d 1219, 1223. We now turn our attention to the officers' independent investigation.

¶18 The search warrant application cites several attempts by law enforcement officers to corroborate CI's information. One method of corroboration included verifying the physical description of Gray and the Grand residence. In *State v. Griggs*, 2001 MT 211, ¶ 50, 306 Mont. 366, ¶ 50, ___ P.3d ___, ¶ 50, we recently held that "adequate law enforcement investigation," when required, means that the subsequent corroboration of an informant's tip must reveal indicia of human conduct that becomes suspicious when viewed in conjunction with the incriminating information received from the informant concerning a suspect's particular criminal activity.

¶19 In *Griggs*, an anonymous caller phoned detectives to inform them of an illegal mushroom growing operation conducted in Griggs's home. The anonymous caller claimed to have personal knowledge of the operation and provided the detectives with a description and address of the property, a physical description of Griggs, a description of the vehicle driven by Griggs, and Griggs's history of military service as a "sharpshooter."

The detectives confirmed all of this information through records checks and observation of the home's exterior. Based on that information, the detectives obtained a search warrant and subsequently arrested Griggs for drug related offenses. Griggs filed a motion to suppress the evidence and the district court granted his motion. We affirmed the district court and articulated the necessity that "innocent" non-criminal activity or evidence subjected to further corroboration by officers ripens into suspicious behavior in light of the informant's "tip" concerning criminal activity. *Griggs*, ¶ 44. In *Griggs*, "none of the instances of subsequent police investigation served to supply the magistrate with any indicia of human conduct even remotely associated with the criminal activity alleged by the anonymous informant." *Griggs*, ¶ 51.

¶20 Here, verifying the physical description and Gray's occupation of the Grand residence provided the same innocuous confirmation as that contemplated in *Griggs*. While this information may be important for investigative identification, it provided no indicia of suspicious human conduct to substantiate CI's allegations. Therefore, we must look for further police investigation to satisfy the probable cause requirement for the issuance of a search warrant.

¶21 Even ignoring the corroborated innocuous information, the search warrant application presented sufficient corroboration to support probable cause. The four corners of the application presented to the magistrate stated that: (1) Wallace had a criminal history involving dangerous drugs; (2) officers observed Gray's brother, a "known drug user," frequent the residence; (3) the Grand residence had four new air vents and a new pipe or chimney which, based on Stradinger's experience and training, were consistent with the ventilation requirements of a grow operation; and (4) the utility records for October 1997 revealed an unusual surge in electrical power usage as compared to the previous four months.

¶22 On appeal, Gray engages in a technical dissection of the search warrant application suggesting that this Court make various assumptions about the evidence presented to the magistrate. *See State v. Oleson*, 1998 MT 130, ¶ 12, 289 Mont. 139, ¶ 12, 959 P.2d 503, ¶ 12. Gray urges us to accept his offer of seemingly innocent explanations for the suspicious conduct. *See Oleson*, ¶ 12. We decline to do so.

¶23 Gray contends that the references to his brother and the air vents in the search warrant application indicate no illegal conduct as they are consistent with everyday activity. Gray attached an affidavit to his motion to suppress in which the affiant stated the air vents had

been installed approximately ten years ago to comply with Uniform Building Code specifications. However, after hearing testimony in contemplation of Gray's motion to suppress, the District Court found that "a reasonable and prudent investigator could assume that the vents were of recent origin." Further, in his reply brief filed on his own behalf, Gray asserts that his brother's criminal record reveals mere traffic violations and no indication of the "known drug user" status to which Detective Stradinger referred. Both of Gray's allegations allude to false information or incorrect inference in the search warrant application.

¶24 When a defendant challenges the veracity of information in a search warrant application, the defendant must make a substantial preliminary showing that the application or affidavit in support of the search warrant included false information. *State v. Worrall*, 1999 MT 55, ¶ 32, 293 Mont. 439, ¶ 32, 976 P.2d 968, ¶ 32. If the defendant makes such a showing, then a hearing must be held wherein the defendant must prove, by a preponderance of the evidence, that the information is untrue. *Worrall*, ¶ 32. If proven untrue, then the information must be excised from the application and a determination must be made whether there is sufficient probable cause without the excised information. *Worrall*, ¶ 32.

¶25 As previously mentioned, Gray did attach an affidavit to his motion to suppress which challenged the veracity of Stradinger's observations regarding the air vents. Gray's motion makes no mention of his brother's criminal record. In finding that a reasonable and prudent investigator could assume that the vents were of recent origin, the District Court impliedly found Stradinger's testimony more credible than Gray's affiant. The District Court was in the best position to judge the credibility of these witnesses and we will not interfere with that determination. *See Worrall*, ¶ 50. While Gray reiterates the affiant's position on appeal, he does not challenge the District Court's finding or ask this Court to excise this information from the four corners of the search warrant application. Therefore, the magistrate properly considered these factors in evaluating probable cause.

¶26 Next, Gray argues the magistrate should not have considered the utility records in issuing a search warrant. Gray insists that the references to his residential power consumption in the search warrant application contained insufficient detail as well as conclusory statements. To support his insufficient detail argument, Gray cites *State v. Hook* (1992), 255 Mont. 2, 839 P.2d 1274, and *State v. Kaluza* (1995), 272 Mont. 404, 901 P.2d 107.

¶27 In *Hook*, detectives arrested the defendant following a search of his cabin (pursuant to a warrant) which revealed marijuana plants, growing equipment, and drug paraphernalia. Hook filed a motion to suppress the evidence, claiming insufficient corroboration of an anonymous tip, and the district court granted the motion. As part of the detective's independent investigation, he obtained power usage bills for Hook's residence. The detective summarized his power usage findings in the search warrant application. In the application the detective provided: the basis for his expertise in growing operations (twelve prior marijuana grow investigations), detailed information about Hook's power usage for the previous five months, Hook's times of residence, previous power usage by former occupants, normal residential usage, and comparisons as to these facts both specifically and generally. Based on that and other law enforcement corroboration, we reversed the district court. While *Hook* provides a guidepost for future utility record investigations, it does not require a finding of all of the factors mentioned therein to establish probable cause for the issuance of a search warrant.

¶28 In *Kaluza*, the search warrant application stated the officer had training and experience in investigating indoor marijuana grow operations and was aware that marijuana grow operations consumed large amounts of electricity. The officer subpoenaed utility records and included in the application a Montana Power Company employee's opinion that the residence exhibited abnormally high levels of electricity consumption during all seasons, particularly since the residence was heated with natural gas. The officer attached a graph to the application illustrating the residence's power usage over the previous two years. We decided that the *Kaluza* application contained power usage information decidedly inferior to that in *Hook* both qualitatively and quantitatively. *Kaluza*, 272 Mont. at 409, 901 P.2d at 110. Since the application contained no basis for the officer and employee's conclusory statements or detailed comparisons with average and previous resident's power usage, we concluded that the search warrant application did not establish probable cause for the issuance of a search warrant under the totality of the circumstances test. *Kaluza*, 272 Mont. at 409-10, 901 P.2d at 110.

¶29 The search warrant application at bar contained the following information: (1) electric power consumption at the Grand residence appeared relatively constant between June and September 1997; (2) the residence used considerably more electricity (376 kwh more) in October 1997 as compared to the previous four months; (3) a Montana Power Company employee advised officers that the "spike" or increased power consumption in October 1997 was unusual; and (4) that based on the detective's experience, marijuana grow operations require increased electrical power usage over and above usual residential power

needs. The distinguishing factor in this application is the comparison of the October power usage to that of the previous four months. This comparison revealed to Stradinger and the Montana Power Company employee an unusual acute phenomenon as opposed to the consistently high two-year utility records examined in *Kaluza*. This information properly assisted the magistrate in determining whether the warrant application was supported by probable cause.

¶30 Finally, Gray postulates that the search warrant application contained unsubstantiated conclusory statements contrary to our holding in *State v. Wilson* (1992), 254 Mont. 317, 837 P.2d 1346. In *Wilson*, we stated that "conclusory statements will not provide substantial basis to conclude that probable cause existed to issue a search warrant." *Wilson*, 254 Mont. at 320, 837 P.2d at 1348. Gray argues the statements about the residence's power usage, illegal ventilation purpose of the "new" vents and chimney, and inference of illegal conduct surrounding Gray's brother's visits to the residence constitute unqualified conclusory statements.

¶31 Gray's reliance on *Wilson* is misplaced. In *Wilson*, the magistrate issued a search warrant for a residence which resulted in the defendant's arrest for cultivating a marijuana growing operation. The defendant filed a motion to suppress which the district court denied. We reversed, in part, on the grounds that the search warrant contained conclusory statements regarding the utility records for the residence. The search warrant simply stated that the defendant's power bills reflected a power use "consistent with that of a grow operation." The application contained no data from the records or any information concerning the detective's experience in analyzing power usage records.

¶32 Here, Stradinger premised both of his ventilation and power usage observations on his training and experience. At a minimum, this is distinguishable from the bare assertions imparted in *Wilson*. As the United States Supreme Court pointed out in *Gates*:

> The [probable cause] process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Gates, 462 U.S. at 231-32, 103 S.Ct. at 2328-29, 76 L.Ed.2d at 544. At some point we must lend credence to the judgment of law enforcement officers whose training and experience invoke common-sense conclusions about human behavior. So long as officers provide reasonable justifications for their conclusions, we will not disturb a finding of probable cause for the issuance of a search warrant.*

¶33 In summary, the reliable confidential informant's hearsay information was corroborated by independent police investigation. Wallace had a past criminal history involving illegal drugs. The officers observed Gray's brother, a known drug user, frequent the residence. Investigators represented in the warrant application that new air vents and a new pipe or chimney had apparently been installed which were consistent with the ventilation requirements of a grow operation. Utility records disclosed a surge or spike in electrical use which was consistent with a suspected grow operation. The subsequent corroboration revealed "indicia of human conduct that becomes suspicious when viewed in conjunction with the incriminating information received from the informant concerning a suspect's particular criminal activity." *See Griggs*, ¶ 50. When evaluating the four corners of the search warrant application, in light of the totality of the circumstances test, the magistrate and District Court properly concluded that probable cause existed for the issuance of a search warrant.

¶34 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART