Nos. 01-623 & 01-626

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 255

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

APRIL T. MARKS and TONY MARKS,

   Defendants and Appellants.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
       In and for the County of Yellowstone,
       The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

   For Appellants:

     Vernon E. Woodward, Hendrickson, Everson, Noennig & Woodward, P.C.,
     Billings, Montana

   For Respondent:

     Hon. Mike McGrath, Attorney General; C. Mark Fowler,
     Assistant Attorney General, Helena, Montana

     Dennis Paxinos, Yellowstone County Attorney; Scott Twito, Deputy County
     Attorney, Billings, Montana

         Submitted on Briefs: February 21, 2002

            Decided: November 21, 2002

Filed:

    ————————————————————————
          Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     April T. Marks and Tony Marks ("the Markses") appeal from the February 21, 2001, Order entered by the Montana Thirteenth Judicial District Court, Yellowstone County, denying their motion to suppress evidence seized pursuant to a search warrant. We affirm.

¶2     The following issue is presented on appeal:

¶3     Whether the District Court erred in determining there was sufficient probable cause to support the issuance of a search warrant?

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     The following facts were set forth in the application for a search warrant and are pertinent to our review: The Markses own a personal residence located at 310 Ecton Circle in Billings, Montana. At approximately 2:03 p.m. on October 27, 1999, a neighbor called 911 to report a fire at the Markses' home. Members of the Billings Fire Department arrived at the scene several minutes later. Upon arrival, the firefighters observed flames coming from the windows and the roof in the northwest corner of the Markses' home. Eventually, the fire was extinguished.

¶5     Mrs. Marks was at the scene as Fire Department officers contained the blaze. She stated to Fire Department Officer John Staley that she had left her home at approximately 2:00 p.m., returned approximately 20 minutes later and smelled smoke when she opened the door to her home.

¶6     After the fire was contained, Deputy Fire Marshal Ted Warren ("Deputy Marshal Warren") entered the home and started to investigate the cause and origin of the fire. Upon

2

entering the house, it appeared to him that some of the contents of the house had been removed before the fire because the house contained few items of furniture or clothing. He also noticed that the fire had caused heavy fire and smoke damage. In his opinion, such damage was inconsistent with an absence of only twenty minutes.

¶7 Detective Blake Richardson ("Detective Richardson") of the Billings Police Department was called to the scene. Detective Richardson is a member of the Billings Arson Team, which is comprised of officers from the Billings Police Department, the Billings Fire Department, the Yellowstone County Sheriff's Office, and the Federal Bureau of Alcohol, Tobacco, and Firearms. Upon his arrival, Detective Richardson was informed by Deputy Marshal Warren that the fire appeared suspicious and an arson investigation should be conducted. Shortly thereafter, Detective Richardson spoke with Mr. Marks on the scene. Detective Richardson identified himself as a member of the Billings Arson Team and told him that the Fire Marshall thought the fire was suspicious and an arson investigation would be conducted. Mr. Marks then stated, "Do you think I torched my own house?" Detective Richardson responded that he did not know and requested that Mr. Marks sign a consent to search the house for evidence regarding the cause and origin of the fire. Mr. Marks was reluctant to sign the consent and spoke to his brother, who was also at the scene. His brother called an attorney regarding the consent to search. Subsequently, both Mr. and Mrs. Marks signed consents to search their house. However, their consents to search were not utilized since Mr. Marks was reluctant to allow officers into the house after signing the consent. Additionally, Mr. Marks stated that Mrs. Marks "was out of her mind and going bonkers

3

about the fire." The officers at the scene felt that Mrs. Marks' consent to search would be invalid based on her state of mind. Consequently, Detective Richardson applied for a search warrant that same day stating the aforementioned facts as grounds to establish probable cause. Finding probable cause, Justice of the Peace Pedro Hernandez issued a warrant to search the Markses' home for ignitable liquids, ignitable liquid containers, timing devices, matches, lighters, gas torches, cigarettes, electrical equipment, mechanical equipment, insurance and financial documents, phone records, and evidence of items being removed from the premises prior to the fire.

¶8 During the search of the Markses' home, the police seized financial and insurance documents and phone numbers for cellular phones owned by the Markses. The police later obtained investigative subpoenas to review additional financial documents and the Markses' cellular phone accounts. The evidence seized implicated the Markses in the arson of their home. On August 10, 2000, the Yellowstone County Attorney filed separate informations charging Mr. and Mrs. Marks with arson in violation of § 45-6-103, MCA. On January 4, 2001, the State filed an amended information charging Mr. Marks with arson by accountability in violation of § 45-6-103, MCA, and § 45-2-302, MCA.

¶9 On January 2, 2001, the Markses jointly filed a motion to suppress all evidence resulting from the search of their home. The District Court held a suppression hearing on February 8, 2001. On February 21, 2001, the District Court entered an Order denying their motion. Mrs. Marks pled guilty to the offense of arson and Mr. Marks pled guilty to the offense of arson by accountability on April 11, 2001, pursuant to the terms of their individual

4

*Alford* plea agreements. The District Court entered Judgments against the Markses on July 10, 2001, sentencing Mrs. Marks to a three year suspended sentence and Mr. Marks to a five year suspended sentence. The Markses appeal. For purposes of appeal, the Markses' cases were consolidated.

## STANDARD OF REVIEW

¶10    We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law is correct. *See State v. Gray*, 2001 MT 250, ¶ 10, 307 Mont. 124, ¶ 10, 38 P.3d 775, ¶ 10 (citing *State v. Reesman*, 2000 MT 243, ¶ 18, 301 Mont. 408, ¶ 18, 10 P.3d 83, ¶ 18).

## DISCUSSION

¶11    Whether the District Court erred in determining there was sufficient probable cause to support the issuance of a search warrant?

¶12    The Markses argue that the application for search warrant prepared by Detective Richardson does not meet the requirements of § 46-5-221, MCA. First, they allege that the application does not meet the requirements of § 46-5-221(1), MCA, because it establishes only suspicion, not probable cause, that the crime of arson was committed. Second, they claim the application presented in this matter is analogous to the application invalidated in *Application of Gray* (1970), 155 Mont. 510, 473 P.2d 532, since both applications failed to state facts upon which a finding of probable cause could be made that any of the property or items to be seized were connected with the offenses allegedly committed, as required by §

46-5-221(2), MCA. Third, they assert the application sets forth no facts to establish probable cause that any of the items to be seized would be found in their home. Because of these failures, the Markses contend that the search warrant is invalid, the search unconstitutional, and the evidence seized must be suppressed.

¶13 In response, the State maintains the totality of the circumstances set forth in the four corners of the warrant application established a fair probability that the crime of arson had occurred at the Markses' residence. In particular, the State points out that the court issuing the warrant was informed that a sizable fire had consumed a home nearly devoid of furniture or personal belongings. In addition, the warrant application provided that Mrs. Marks' statements regarding her length of absence were inconsistent with the magnitude of fire damage. Further, the application stated facts demonstrating that Mr. Marks' behavior was atypical of a fire victim. The State additionally argues that these facts, as evaluated in a practical and common-sense manner by the issuing magistrate, established a substantial basis to believe the evidence sought was connected to the crime of arson and would be found in the Markses' residence. We agree.

¶14 Pursuant to § 46-5-101(1), MCA, a search of a place may be made and evidence may be seized by the authority of a valid search warrant. A warrant is valid if the application made in support thereof states facts sufficient to show probable cause in accordance with the requirements of § 46-5-221, MCA. *See State v. Kuneff*, 1998 MT 287, ¶ 21, 291 Mont. 474, ¶ 21, 970 P.2d 556, ¶ 21 (citation omitted). Section 46-5-221, MCA, provides:

6

**Grounds for search warrant.** A judge shall issue a search warrant to a person upon application, in writing or by telephone, made under oath or affirmation, that:

(1) states facts sufficient to support probable cause to believe that an offense has been committed;

(2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;

(3) particularly describes the place, object, or persons to be searched; and

(4) particularly describes who or what is to be seized.

¶15 We have adopted the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, to determine whether probable cause exists. *See Gray* [1], ¶ 13 (citation omitted). The Court in *Gates* held that:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. We have held that probable cause exists when the facts and circumstances presented "would warrant an honest belief in the mind of a reasonable and prudent man that the offense has been, or is being, committed and that the property sought exists at the place designated." *Kuneff*, ¶ 22 (quoting *State v. Isom* (1982), 196 Mont. 330, 343, 641 P.2d 417, 424). Therefore, a determination of probable cause does not require facts sufficient to make a prima facie showing of criminal

---

[1] All references to *Gray* hereinafter in this Opinion refer to *State v. Gray*, 2001 MT 250, 307 Mont. 124, 38 P.3d 775.

7

activity. *See State v. Griggs*, 2001 MT 211, ¶ 27, 306 Mont. 366, ¶ 27, 34 P.3d 101, ¶ 27 (citations omitted). Rather, the issuing magistrate must only determine that there is a fair probability that an offense has been committed and that the contraband or evidence sought will be found at the place designated. *See Griggs*, ¶ 27 (citations omitted).

¶16 Under the totality of the circumstances test, we must look solely to the four corners of the search warrant application. *See Gray*, ¶ 13 (citation omitted). In doing so, we must refuse to review a search warrant application sentence by sentence. *See Gray*, ¶ 11 (citation omitted). Instead, we must examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude probable cause existed. *See Gray*, ¶ 11 (citation omitted). As the United States Supreme Court pointed out in *Gates*:

> The [probable cause] process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Gates*, 462 U.S. at 231-232, 103 S.Ct. at 2328-2329, 76 L.Ed.2d at 544.

¶17 After evaluating the facts contained in the four corners of Detective Richardson's search warrant application, in light of the totality of the circumstances test, we conclude that the requirements of § 46-5-221, MCA, were fulfilled. Pursuant to § 46-5-221(1), MCA, the

8

application set forth facts establishing a fair probability that the crime of arson had occurred at the Markses' residence. Most notably, Detective Richardson stated facts demonstrating that furniture and clothing were removed from the Markses' home prior to the fire; Mrs. Marks' statements regarding her length of absence conflicted with the time the fire was reported and the extent of fire damage; and the behavior of Mr. Marks was atypical of a fire victim. While such facts do not necessarily establish a prima facie showing that arson was committed, the facts do warrant the determination by a reasonable and prudent person that there is a fair probability criminal activity occurred.

¶18    Moreover, we conclude that the facts presented in *Application of Gray* are distinguishable from those presented in this case. In *Application of Gray*, the affiant stated no facts that a crime was committed or that the evidence sought was connected to the crime allegedly committed. *Application of Gray*, 155 Mont. at 519, 473 P.2d at 537. Instead, the affiant merely stated that he "has actual knowledge and does believe" that the designated articles involved in the crime of burglary were located on the premises to be searched. *Application of Gray*, 155 Mont. at 518-519, 473 P.2d at 536. Here, Detective Richardson did not merely provide conclusory statements. Rather, he stated multiple facts supporting his conclusion that the crime of arson was committed at the Markses' residence. We have repeatedly emphasized that in our review "it is critical that we pay great deference and draw every reasonable inference possible to support a magistrate's determination that probable cause exists." *Gray*, ¶ 13 (citing *Reesman*, ¶ 19). We have pointed out that:

9

> At some point we must lend credence to the judgment of law enforcement officers whose training and experience invoke common-sense conclusions about human behavior. So long as officers provide reasonable justifications for their conclusions, we will not disturb a finding of probable cause for the issuance of a search warrant.

*Gray*, ¶ 32. Therefore, we will examine a search warrant application in a "common sense, realistic fashion and without a grudging or negative attitude that will tend to discourage police officers from seeking warrants." *State v. Rinehart* (1993), 262 Mont. 204, 210-211, 864 P.2d 1219, 1223 (citation omitted).

¶19 After reviewing the facts presented in the search warrant application in a common sense, realistic fashion, we conclude that Detective Richardson provided reasonable justifications for his conclusion that evidence connected to the crime of arson would be found at the Markses' residence pursuant to the requirements of § 46-5-221(2), MCA. A common sense evaluation unquestionably establishes a fair probability that evidence relating to the cause and origin of a fire will be found where the fire occurred. Similarly, a common sense review establishes a fair probability that the items sought in Detective Richardson's warrant application are connected to the crime of arson. For instance, insurance and financial documents tend to establish whether or not an individual had a motive to commit arson. *See Emcasco Insurance Co. v. Waymire* (1990), 242 Mont. 131, 788 P.2d 1357. Thus, giving credence to Detective Richardson's training and experience, it was reasonable for him to conclude that such items would be connected to the offense of arson. Determining otherwise

would negate a common sense evaluation and contradict long established precedent affording great deference to a magistrate's determination that probable cause exists. Additionally, such a determination would tend to discourage law enforcement from seeking warrants.

¶20 Furthermore, we conclude that the warrant application particularly stated the place to be searched and the items to be seized in accordance with § 46-5-221(3)-(4), MCA. Consequently, we hold that the District Court properly concluded that sufficient probable cause was established pursuant to the requirements of § 46-5-221, MCA, to support the issuance of a search warrant.

¶21 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Terry N. Trieweiler dissenting.

¶22    I dissent from the majority opinion.

¶23    Section 46-5-221, MCA, provides that a search warrant may be issued when the applicant sets forth *facts* under oath that are sufficient to establish probable cause to believe that an offense has been committed and that evidence connected with the offense may be found.  It also requires that the applicant describe under oath what is to be seized.  These statutory requirements are consistent with what we have held is required to establish probable cause for issuance of a search warrant.  *See State v. Kuneff*, 1998 MT 287, ¶ 22, 291 Mont. 474, ¶ 22, 970 P.2d 556, ¶ 22.  Article II, Section 11 of the Montana Constitution prohibits issuance of a search warrant without probable cause.

¶24    The application submitted for a warrant to search the home of the Defendants, Tony and Theresa Marks, provided no *facts* to establish probable cause that a crime had been committed.  It provided no *facts* to establish probable cause that evidence of a crime would be found and it did not describe with any specificity the items to be seized.  The fact that the majority would approve of the application places in serious doubt the continued viability of prior search and seizure case law and the majority's commitment to the protection of Montanans from unreasonable searches and seizures.

¶25    The majority sets forth the following allegations from the application as evidence that a crime had been committed:

> Deputy Fire Marshal Ted Warrant started to investigate the cause and origin of the fire and when he entered the house, he noticed that the house did not have a lot of furniture and clothing in the closets and it appeared to him that some of the contents of the house had been removed before the fire.  He

12

also noticed that the house had heavy fire/smoke damage, which was inconsistent with the home owners statement of being gone for only twenty minutes.

. . . .

Detective Richardson then talked with Tony Marks, at which time he identified himself as a Billings police detective and member of the Arson Team and told him that the Fire Marshall [sic] thought the fire was suspicious and that [sic] arson investigation was going to take place. Marks stated "Do you think I torched my own house". He was told that I did not know and and [sic] requested that he sign a consent to search allowing the team to search his house for evidence to this cause and origin of the fire and any evidence of possible arson.

Tony Marks was reluctant to sign the consent to search, and talked with his brother Jim Marks who was also at the fire scene. Jim Marks called an attorney and talked to him about the consent to search. In the end, both Tony & Theresa did sign a consent to search, however, this consent was not used as Tony Marks was requesting to be present in the house during the search, and still was reluctant to have Police Officers inside his house.

¶26 None of these facts indicate that a crime had been committed. The fact that the house did not have a lot of furniture or clothing by itself was not significant unless compared to the normal contents of the house. There was no foundation to show that the furniture and clothing in the house at the time of the fire was any different than would normally have been present.

¶27 The fact that Theresa Marks estimated her absence from her home at 20 minutes and that the amount of damage done was greater than could have occurred in 20 minutes means absolutely nothing. The question is how long the fire burned. There is nothing in the affidavit to indicate when in the course of the fire's suppression Theresa Marks returned to her home.

13

¶28 Finally, there was nothing atypical about Tony Marks' reaction to the suggestion that the fire in his home was being investigated for arson. Nor is it in any way incriminating for a person to decline to have his or her home searched by the police. A person has as much right to invoke his right to be free from unreasonable searches and seizures as he or she does to invoke his right to remain silent. Otherwise the rights are meaningless.

¶29 Nothing set forth in the application for a search warrant amounts to more than a mere suspicion that the fire was intentionally started. However, a mere suspicion is not sufficient to establish probable cause of a crime. In *State v. Lott* (1995), 272 Mont. 195, 199, 900 P.2d 306, 309, we stated that:

> "A mere affirmance of belief or suspicion by a police officer, absent any underlying facts or circumstances, does not establish probable cause for the issuance of a search warrant." Here the affiant's statement that appellant's vehicles "may be used" to distribute drugs is unsupported by any underlying facts or circumstances. [Citation omitted.]

¶30 Nor are there any facts in the application for search warrant which would satisfy the requirement at § 46-5-221(2), MCA, that probable cause be established to believe that evidence may be found on the premises to be searched. Detective Blake Richardson made the following conclusory statement:

> there have been and are now located certain items of personal property which are EVIDENCE and are particularly described as being:
>
> CAUSE & ORIGIN OF THE FIRE TO INCLUDE, BUT NOT LIMITED TO IGNITABLE LIQUIDS, IGNITABLE LIQUID CONTAINERS, TIMING DEVICES, MATCHES, LIGHTERS, GAS TORCHES, CIGARETTES, ELECTRICAL EQUIPMENT, MECHANICAL EQUIPMENT, INSURANCE & FINANCIAL DOCUMENTS, PHONE RECORDS, EVIDENCE OF ITEMS BEING REMOVED FROM THE PRIOR TO THE FIRE.

14

¶31 However, not one additional fact was set forth in the affidavit to establish how Richardson arrived at this opinion. It is apparent from Richardson's testimony why no further facts were set forth. At the time that he prepared the application, he had no idea how the fire had started. Therefore, he had no idea whether the items listed in the application would be found.

¶32 In *Application of Gray* (1970), 155 Mont. 510, 473 P.2d 532, we held that a search warrant had been illegally obtained when based on the same kind of conclusory statements. We held that:

> Where, as here the affiant merely states the conclusion that the affiant "has knowledge and does believe" that the designated articles involved in the burglary are located on the premises to be searched it is insufficient to establish probable cause. This has long been held true under the Montana Constitution and statutes relating to the issuance of search warrants, facts enabling the magistrate to make a judicial determination of the existence of probable cause being required. Affidavits relied upon for the issuance of search warrants in both federal and state prosecutions must contain sufficient facts to enable an impartial commissioner or magistrate to determine whether probable cause exists under the Fourth Amendment. Here no facts whatever are given, only affiant's ultimate conclusions that he has actual knowledge and believes that the designated articles are located upon the premises to be searched. [Citations omitted.]

*Application of Gray*, 155 Mont. at 519, 473 P.2d at 536-37.

¶33 The majority concludes that *Gray* is distinguishable but cites absolutely no facts from the application which would support probable cause to believe that evidence of a crime would be found in the home or particularly described what evidence was to be seized. Instead, the majority recites every out of context platitude cited in the State's brief which would justify a search without any facts. You can tell there are no facts to support the search

15

warrant in this case when the majority has to refer to "common sense" eight times in its opinion–six times in the last two out of three paragraphs alone. The majority's new mantra is "common sense."

¶34 Common sense is good. Facts are better. More importantly, facts are statutorily and constitutionally required. Here none were offered. Furthermore, not all of Detective Blake Richardson's conclusions demonstrate "common sense." Therefore, I would reverse the District Court's order denying the Defendants' motion to suppress evidence seized pursuant to the search warrant and I dissent from the majority's refusal to do so.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson dissents.

¶35 For the most part, I concur in Justice Trieweiler's dissenting opinion. However, I do not agree that the majority opinion casts doubt either on this Court's prior search and seizure jurisprudence or on our collective commitment to the broader protections afforded Montanans from unreasonable searches and seizures under Article II, Sections 10 and 11 of this State's Constitution. I simply believe that the majority has come to the wrong conclusion as a matter of law on the issue before us.

¶36 Specifically, if one reviews the affidavit purportedly establishing the basis for the issuance of the search warrant, the pertinent provisions of which are set out by Justice Trieweiler, what is apparent is that Detective Richardson's application is long on suspicion and short--indeed, too short--on probable cause. There are no facts which establish what caused or supposedly caused the fire; there are no facts which establish that any typical causes of home fires were eliminated--electrical problems, mechanical problems, spontaneous combustion, smoking materials, or appliance misuse or failure; there are no facts which indicate a fire was purposely caused for financial gain; there are no facts which lead to a conclusion of a fire set to harm another or to conceal some other crime; and there are no facts which point to the use of accelerants or suspect burn patterns. In short, there are no facts which point to a fire set in violation of § 45-6-103, MCA.

¶37 That Detective Richardson suspected arson is not sufficient under the law. He was not constitutionally entitled to go an a fishing expedition through someone's home to satisfy his suspicions one way or the other. Indeed, long ago we specifically condemned that practice.

17

*State ex rel. Thibodeau v. District Court* (1924), 70 Mont. 202, 209, 224 P. 866, 869 ("the search and seizure statutes are not intended to permit fishing expeditions into the homes of citizens on the possibility that evidence of crime may be disclosed"). Yet, the warrant issued here allowed Detective Richardson to do precisely that--satisfy his suspicions with a fishing expedition into the Markses' home for evidence of a crime.

¶38 We stated in *State v. Siegal* (1997), 281 Mont. 250, 934 P.2d 176, overruled on other grounds by *State v. Kuneff*, 1998 MT 287, 291 Mont. 474, 970 P.2d 556, that:

> [a] mere affirmance of belief or suspicion by a police officer, absent any underlying facts or circumstances, does not establish probable cause for the issuance of a search warrant.

*Siegal*, 281 Mont. at 283, 934 P.2d at 195 (citing *State v. Isom* (1982), 196 Mont. 330, 343, 641 P.2d 417, 424). This is precisely the rule violated here, and for that reason, I would hold that the sworn application did not set forth sufficient underlying facts or circumstances to establish probable cause for the issuance of the search warrant at issue here.

¶39 I would suppress the evidence seized as a result of the execution of the search warrant along with the "fruit of the poisonous tree"--i.e., the evidence seized as a result of the subsequent execution of investigative subpoenas which were issued on the basis of the tainted evidence obtained under the search warrant. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *State v. Dolan* (1997), 283 Mont. 245, 940 P.2d 436.

18

¶40     I dissent from our failure to do so.

/S/ JAMES C. NELSON